MERCHANTS' STOCK & GRAIN CO. et al. v. BOARD OF TRADE OF
CITY OF CHICAGO et al.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1911.)

No. 3,404.

*(Syllabus by the Court.)*

1. CONTEMPT (§ 70*)—"CIVIL CONTEMPTS"—"CRIMINAL CONTEMPTS"—DIS-
TINCTION.

Contempts are of two classes: "Criminal contempts," which are prose-
cuted to preserve the power and vindicate the dignity of the courts and
to punish the offender; and "civil contempts," which are prosecuted to
preserve and enforce the rights of private parties and to compel obe-
dience to orders and decrees to enforce the rights and administer the
remedies to which the court has found or may find the private parties
to be entitled.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 246; Dec.
Dig. § 70.*

For other definitions, see Words and Phrases, vol. 2, pp. 1194, 1747,
1748.]

2. CONTEMPT (§ 66*)—JUDGMENTS FOR, HOW REVIEWABLE IN SUITS IN EQUITY.

A judgment for a criminal contempt committed in the progress of a
suit in equity is reviewable by writ of error only.

A judgment against a party to a suit in equity for a civil contempt
committed therein before final decree is reviewable by appeal from the
final decree only.

A judgment against a party for a civil contempt committed after the
final decree is reviewable by appeal.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 214; Dec.
Dig. § 66.*]

3. CONTEMPT (§ 66*)—JUDGMENT FOR VIOLATION OF TEMPORARY INJUNCTION
IN EQUITY SUIT A CIVIL CONTEMPT.

A judgment that the defendants in a pending equity suit are guilty
of contempt of court for the violation of an interlocutory injunction is-
sued against them at the instance of the complainant, and that they pay
fines therefor, three-fourths to the complainant and one-fourth to the
government, is for a civil contempt, and is reviewable by appeal from
the final decree only, because the chief purpose of the proceeding is to
prevent irreparable injury to the complainant and to preserve its prop-
erty pendente lite, because the complainant is the party chiefly interested
in it and the party that commenced and conducted the proceedings for
the contempt, because the proceeding is for an act done by parties to a
suit in disobedience of a special order made in behalf of their opponent
in that suit, and because the dominant effect as well as the object of
the proceeding is to coerce the defendants to obey the injunction for the
purpose of preserving the property of the complainant, and the punitive
element in it is subordinate, incidental, and negligible.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 214; Dec. Dig.
§ 66.*]

In Error to the Circuit Court of the United States for the Eastern
District of Missouri.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Bill by the Board of Trade of the City of Chicago and the United States against the Merchants' Stock & Grain Company and others. From an order finding defendants guilty of contempt of an interlocutory injunction, they bring error. Dismissed.

Chester H. Krum and Henry S. Priest, for plaintiffs in error.

Henry S. Robbins (Martin H. Foss and Sears Lehmann, on the brief), for defendants in error.

Before SANBORN and ADAMS, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. [2] The plaintiffs in error complain that they were found guilty of contempt of court and fined for a violation of an interlocutory injunction issued in a pending suit in equity brought against them by the Board of Trade of Chicago. As the suit in equity has not passed to final decree, the first question is whether or not the judgment of contempt is reviewable by writ of error; for the rule is well settled that, while a judgment for a criminal contempt may be challenged by a writ of error (Act March 3, 1891, c. 517, § 6, 26 Stat. 828 [U. S. Comp. St. 1901, pp. 549, 550]; Bessette v. W. B. Conkey Company, 194 U. S. 324, 338, 24 Sup. Ct. 665, 48 L. Ed. 997; Matter of Christensen Engineering Co., 194 U. S. 458, 461, 24 Sup. Ct. 729, 48 L. Ed. 1072), a judgment against a party to a suit in equity for a civil contempt is reviewable by appeal only (Doyle v. London Guarantee Company, 204 U. S. 599, 602, 603, 605, 607, 27 Sup. Ct. 313, 51 L. Ed. 641; Ex parte Heller, 214 U. S. 501, 502, 29 Sup. Ct. 698, 53 L. Ed. 1060; Webster Coal Co. v. Cassatt, 207 U. S. 181, 28 Sup. Ct. 108, 52 L. Ed. 160; Clay v. Waters, 101 C. C. A. 645, 178 Fed. 385, 391, 392).

The injunction in this case was issued at the instance of the Board of Trade, to protect it from irreparable injury until the final decree could be rendered in the suit. The defendants in the suit, the plaintiffs in error here, must be assumed, for the purpose of the decision of this preliminary question, to have violated this injunction, and to have inflicted serious injury upon the Board while the suit was pending, and the court fined them for these unlawful acts, and ordered three-fourths of the fines to be paid to the Board and one-fourth thereof to the United States.

[1] Counsel for the defendants below argue that this is a judgment for a criminal contempt, because one-fourth of the fines are to be paid to the United States, and because the true line of demarcation between civil contempts and criminal contempts in their opinion was drawn by the Supreme Court of South Dakota in State v. Knight, 3 S. D. 509, 514, 54 N. W. 412, 413, 44 Am. St. Rep. 809, and the contempt here in question falls on the criminal side of that line. That court said:

"If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed until he complies with the order. * * * If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the proceeding is criminal, and conviction is followed by fine or imprisonment, or both; and this is by

way of punishment. * * * This rule, as definitely stated, has not been expressly recognized by any case coming under our observation, but it is consistent with all the decisions."

The opinion from which these quotations are made was written in the year 1893. While the line of demarcation there drawn may not .have been inconsistent with any opinions coming under the eyes ot the Supreme Court of South Dakota at that time, it is inconsistent with the later decisions of the Supreme Court of the United States. In Ex parte Heller, 214 U. S. 501, 29 Sup. Ct. 698, 53 L. Ed. 1060, Heller had been enjoined from using a certain trade-mark and from stamping waistbands in a certain manner, and the court that rendered the decree had adjudged him to be in contempt for violating the injunction, and had fined him $500. He had sued out a writ of error to the Circuit Court of Appeals of the Second Circuit, and that court had dismissed his writ, on the ground that the contempt was not criminal. Heller had then applied to the Supreme Court for a mandamus to compel the Court of Appeals to take jurisdiction of and to decide his case on the merits of the writ of error, and the Supreme Court dismissed his petition, after quoting from the opinion of the Court of Appeals this declaration:

"It is well settled that. when an order imposing a fine for a violation of an injunction is substantially one to reimburse the party injured by the disobedience, it is to be reviewed only by appeal."

The truth is that substantial benefit to a private party preponderating over that to the government is the distinguishing characteristic of a civil contempt, and that benefit is often as great and it arises as frequently from judgments for contempts for disobedience of a prohibitory as of a mandatory order or judgment. In view of this fact, and of the decisions of the Supreme Court which have been cited, we adhere to our earlier statement of the nature and of the distinction between criminal and civil contempts which was made in Re Nevitt, 54 C. C. A. 622, 632, 117 Fed. 448, 458, was approved by the Supreme Court in Bessette v. W. B. Conkey Company, 194 U. S. 324, 328, 24 Sup. Ct. 665, 48 L. Ed. 997, and was affirmed by this court in Clay v. Waters, 101 C. C. A. 645, 178 Fed. 385, 389, which reads:

"Proceedings for contempts are of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people, are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. Thompson v. Railroad Company, 48 N. J. Eq. 105, 108 [21 Atl. 182]; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652; People v. Court of Oyer & Terminer, 101 N. Y. 245, 247 [4 N. E. 259, 54 Am. Rep. 691]; Phillips v. Welch, 11 Nev. 187. 190; State v. Knight, 3 S. D. 509, 513 [54 N. W. 412, 44 Am. St. Rep. 809]; People v. McKane, 78 Hun, 154, 160, 28 N. Y. Supp. 981; 7 Am. & Eng. Enc. Law, 68."

The proceedings upon which the defendants below were adjudged to pay their fines were instituted and conducted, not by the government for an affront to the dignity of the court, but by the complainant below, the Board of Trade of Chicago, to protect its property from continuing trespasses, and to save itself from irreparable injury pendente lite. They were based on its petition, and its counsel presented the evidence in support of it. Neither the United States attorney, nor any other officers of the government, nor any representative of the people, took any part in the prosecution or had any especial interest therein. The purpose of the proceeding was to protect the Board from irreparable injury, and its property, its continuous quotations of the market reports, from continuing trespasses and appropriation by the defendants, by enforcing the injunction which the court had granted to the complainant for that very purpose. The chief object of the fines was to coerce the defendants to obey the injunction during the pendency of the suit and to reimburse the complainant for the expenses of its prosecution of the proceedings for contempt.

[3] It is true that the court below directed that one-fourth of the fines should be paid to the government, and that the Supreme Court held, in Matter of Christensen Engineering Company, 194 U. S. 458, 461, 24 Sup. Ct. 729, 48 L. Ed. 1072, where one-half of the fine was payable to the United States, that the punitive element dominated the proceeding in that case, and made the contempt criminal, and not civil. But in the case at bar the punitive element was incidental, and the civil purpose to protect the property of the complainant was the only real object of the proceeding. The court below never estimated an affront to its dignity and a defiance of its power at one-third of the expense of the proceedings or of the value of complainant's property taken in violation of the injunction. It ordered three-fourths of the fines paid to the complainant and one-fourth to the government for the single dominant object of the proceedings, for the purpose of protecting and preserving the complainant's property and coercing the complainant to obey its injunction that this purpose might be accomplished.

In every civil as well as in every criminal contempt there necessarily inheres an affront to the dignity and a defiance of the power of the court and a liability to punishment therefor. The liability to punishment for an affront to the dignity of the court cannot, therefore, distinguish a civil from a criminal contempt, for it always exists in each. Yet every contempt is either a civil contempt or a criminal contempt. What, then, is the distinguishing characteristic between them? It is the dominating object of the prosecution and the party chiefly interested therein. If the chief purpose of the proceeding for contempt is to enforce the rights and administer the remedies to which courts have adjudged or may adjudge a private party to be entitled, and if such a private party is the one chiefly interested in it, the proceeding is for a civil contempt. If the chief object of the prosecution, as in cases of misconduct in court, or of disobedience of a subpœna, is, by punishment of the offender, to preserve the power and vindicate the dignity of the court, and if the party chiefly interested in the prose-

cution is the government or the public, the proceeding is for a criminal contempt. Debs was sentenced to imprisonment for six months for a violation of a preliminary injunction in a suit in equity. Mr. Justice Brewer said of the proceeding against him and his associates for this contempt:

"The complaint made against them in this is of disobedience to an order of a civil court, made for the protection of property and the security of rights." In re Debs, 158 U. S. 565, 594, 15 Sup. Ct. 900, 39 L. Ed. 1092.

"In brief, a court, enforcing obedience to its orders by proceedings for contempt, is not executing the criminal laws of the land, but only securing to suitors the rights which it has adjudged them entitled to." 158 U. S. 596, 15 Sup. Ct. 911 (39 L. Ed. 1092).

And at 158 U. S. 599, 15 Sup. Ct. 912 (39 L. Ed. 1092), he said:

"That the proceeding by injunction is of a civil character, and may be enforced by proceedings in contempt, that such proceedings are not in execution of the criminal laws of the land."

In Bessette v. W. B. Conkey Company, 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997, where the violation of an injunction by one who was not a party to the suit was held to be, like misconduct in the courtroom, a criminal contempt, Mr. Justice Brewer said that an act might partake of the characteristics of both a civil and of a criminal contempt, but that:

"A significant and generally determinative feature is that the act is by one party to a suit, in disobedience of a special order made in behalf of the other. Yet sometimes the disobedience may be of such a character and in such a manner as to indicate a contempt of the court, rather than a disregard of the rights of the adverse party."

Every act, as we have seen, which constitutes a civil contempt, unavoidably partakes of the characteristics of both a civil contempt and a criminal contempt, because it is necessarily punishable for its affront to the dignity of the court. But the proceeding for contempt is for a civil contempt, and not for a criminal contempt, although its incidental effect may be punitive, if the chief and dominating purpose and effect of the proceeding is to protect the property of a private party to a suit, if the party chiefly interested in the proceeding is such a private party, and if the "act is by one party to a suit in disobedience of a special order made in behalf of the other."

The proceeding in the case at bar was clearly of this character. Not only the dominant, but in reality the sole, purpose of it was to protect the property of the complainant pendente lite by coercing the defendants to obey the injunction issued for that purpose. The party chiefly interested in it was the Board of Trade, and that Board instituted and conducted the proceeding, the acts which constituted the contempt were committed by the defendant in a suit in equity in disobedience of a temporary injunction issued in behalf of the complainant, the main effect, as well as the object of the judgment for contempt, is to coerce the defendants to obey the injunction and to cease their continuing appropriation of the complainant's property, and the punitive element in it is subordinate, incidental, and, so far as the discussion and determination of this question is concerned, negligible.

The proceeding in this case was, therefore, for a civil, and not for a criminal, contempt, the judgment for the contempt was in reality an interlocutory order in the equity suit, and it is reviewable by appeal from the final decree only.

Any other practice in suits in equity would in effect render interlocutory injunctions and orders futile, would deprive courts of equity of their salutary power to protect parties from irreparable injury, to control the subject-matter and the parties, and to require the production of evidence pendente lite, and would produce intolerable delay in the prosecution of suits in equity. If, every time that a temporary injunction or an interlocutory order in an equity suit were made, parties to the suit might disobey it, submit to an order or judgment for contempt, and then by writ of error and supersedeas suspend that judgment until an appellate court could review it, the wrongs to prevent which such injunctions issue might be perpetrated before the hearings in the appellate court on the judgments for contempts could be had, and prosecutions of suits in equity might be indefinitely delayed, while parties awaited the decisions of appellate courts upon writs of error challenging the judgments for contempts for disobedience of interlocutory orders regarding the production of evidence and other matters relevant to the conduct of such suits. A practice of this nature should not be approved or permitted, and the writ of error must be dismissed. Doyle v. London Guarantee & Accident Company, 204 U. S. 599, 602, 603, 607, 27 Sup. Ct. 313, 51 L. Ed. 641.

It is so ordered.