A. D. ODOM, ELLA KING, WALTER L. ODOM, CHARLES PEEL, MRS. NEVA GROVES, nee Neva Thompson, OLLIE FOGLEMAN, JESS L. ODOM, RUBY WILLIAMS, MRS. LINNIE OWENS, ROY ODOM, and JOYCE ODOM, Appellants, v. LOUISE W. LANGSTON, Trustee; ST. LOUIS UNION TRUST COMPANY, a Corporation, Trustee; LOUISE W. LANGSTON and ST. LOUIS UNION TRUST COMPANY, a Corporation, Executors of the Estate of Barsha A. Langston, Deceased; LOUISE W. LANGSTON, as an Individual, Respondents.

STATE EX REL. LOUISE W. LANGSTON and ST. LOUIS UNION TRUST COMPANY, as Executors, Relators, v. J. N. BURROUGHS, Respondent.—No. 40207.—213 S. W. (2d) 948.

Court en Banc, September 13, 1948.

Rehearing Denied, October 11, 1948.

*A. W. Landis* and *Elliott H. Jones* for relators.

242

*J. N. Burroughs* for respondent.

[949] TIPTON, J.—Louise W. Langston, individually and as trustee and executrix, and the St. Louis Union Trust Company as trustee and executor of the estate of Barsha A. Langston, deceased, filed a petition in this court requesting that we issue a citation and order to J. N. Burroughs to show cause why he should not be adjudged guilty of contempt of this court. We issued the citation as prayed for by relators-respondents.

J. N. Burroughs, an attorney-at-law, brought a suit on behalf of the appellants to contest the validity of the will of Barsha A. Langston, deceased, which eventually resulted in a verdict of the jury and judgment of the court sustaining the will. In February, 1941, he filed a suit on behalf of the appellants to have the provisions of the trust instrument declared void. The trial judge, Honorable Tom R. Moore, sustained a demurrer to the petition. This court affirmed the

action of the trial court. See 351 Mo. 609, 173 S. W. 2d 826. In September 28, 1943, he filed a suit to attack the validity of the trust instrument and the trial judge, Honorable C. H. Jackson, dismissed the suit with prejudice. That judgment was affirmed by this court. 355 Mo. 115, 195 S. W. 2d 466. In April, 1944, he filed a suit on behalf of appellants to have the trust provisions in the will declared [950] void. This action was dismissed by the last mentioned trial judge because it was barred by statute of limitation. This judgment was affirmed by this court. 355 Mo. 109, 195 S. W. 2d 463.

The effect of the foregoing decisions is that the will and the provisions of the trust are valid and that appellants take nothing under either the residuary clause of the will or under the trust instrument.

On August 21, 1946, Burroughs brought this action on behalf of appellants, attacking the validity of the trust as provided in both the will and the trust instrument. They alleged that they were making the same allegations as to the alleged invalidity of the trust as were made in the suits previously filed. Relators-respondents filed a cross-petition recounting the various suits brought by appellants attacking the validity of the Langston will and trust, all of which were adverse to appellants' contentions, and alleging that this suit was brought for the purpose of harassing the relators-respondents and delaying the settlement of the Langston estate. They prayed that appellants and their attorneys be enjoined from prosecuting this suit or any other suit concerning the Langston estate and trust. The trial judge, Honorable Gordon Dorris, granted a permanent injunction as prayed for by relators-respondents. This action was affirmed by this court. 356 Mo. 1140, 205 S. W. 2d 518.

On December 3, 1947, J. N. Burroughs as an attorney for the appellants instituted an action in the District Court of the United States for the Southern Division of the Western District of Missouri, at Springfield, seeking to have adjudged invalid the residuary clause of the Langston will. On December 22, 1947, relators-respondents filed a petition in this court requesting a citation and order to show cause why J. N. Burroughs should not be adjudged guilty of contempt of this court for filing and prosecuting the above mentioned case in the United States District Court. This court issued the order and citation as requested and on February 27, 1948, he filed his answer.

In relators-respondents' reply to J. N. Burroughs' answer filed March 13, 1948, they alleged among other things ''that said Federal Court suit was dismissed by that court upon motion of'' these relators-respondents and they filed as a part of their reply ''a certified copy of the opinion of Albert L. Reeves, United States District Judge, dismissing said suit.''

Among other defenses, J. N. Burroughs states that he thought the injunction order applied only to the trial court that issued the injunction; that he had been advised by competent counsel that he "would not violate said injunction order by filing suit in Federal Court"; and that he "acted in perfectly good faith in bringing said action in the Federal Court, and without thought or intention of flaunting the power and dignity of this Court."

Of course, a court can only speak through its records. The decree of the trial court which was affirmed by this court reads as follows:

"It is now hereby ordered by the court that the plaintiffs in this cause, and their agents, privies and attorneys, be and are hereby forever restrained and enjoined from further prosecuting the instant suit, above entitled, and from instituting or attempting to prosecute any other suit or action, concerning or with respect to the last will or the estate of Barsha A. Langston, deceased, or concerning or with respect to the trust instrument referred to in the petition and in the cross-petition herein."

The above quoted part of the decree enjoins the appellants, their agents, privies and attorneys from prosecuting the instant suit and from instituting or attempting to institute any other suit concerning the last will or the trust instrument of Barsha A. Langston, deceased, in any court, whether it be a federal court, a court of this state, or a court of any other state. There is no language in the injunction decree that could be construed as enjoining appellants from prosecuting a suit only in the circuit court of Howell County, Missouri. The filing of the suit in the District Court of the United States is a clear violation of the injunction which was affirmed by this court. The violation of this injunction made J. N. Burroughs guilty of civil contempt but not of criminal contempt.

Criminal contempt is where a person is prosecuted to preserve the power and [951] vindicate the dignity of the court and to punish him for disobedience of its orders. Criminal contempt is punitive in its nature, and the state, the courts, and the people are interested in the prosecution. Civil contempt is remedial and coercive in nature, and the parties chiefly interested in the conduct and prosecution are the individuals whose private rights and remedies and contempt proceedings are instituted to protect or enforce. Clay v. Waters, 101 C. C. A. 645, 178 Fed. 385.

In the case of Merchants' Stock & Grain Co., et al. v. Board of Trade of City of Chicago, et al., 187 Fed. 398, 109 C. C. A. 230, l. c. 233, the Circuit Court of Appeals said the following in holding that the violation of an interlocutory injunction by the defendants was civil and not criminal contempt:

"The proceedings upon which the defendants below were adjudged to pay their fines were instituted and conducted, not by the government for an affront to the dignity of the court, but by the complainant

below, the Board of Trade of Chicago, to protect its property from continuing trespasses, and to save itself from irreparable injury pendente lite. They were based on its petition, and its counsel presented the evidence in support of it. Neither the United States attorney, nor any other officers of the government, nor any representative of the people, took any part in the prosecution or had any especial interest therein. The purpose of the proceeding was to protect the Board from irreparable injury, and its property, its continuous quotations of the market reports, from continuing trespasses and appropriation by the defendants, by enforcing the injunction which the court had granted to the complainant for that very purpose. The chief object of the fines was to coerce the defendants to obey the injunction during the pendency of the suit and to reimburse the complainant for the expenses of its prosecution of the proceedings for contempt.''

The case of The State ex rel. Chicago, Burlington & Quincy R. R. Co. et al. v. Bland et al., 189 Mo. 197, 88 S. W. 28, involved the question of whether two defendants who violated an injunction were guilty of criminal or civil contempt. We held they were guilty of civil contempt and in ruling the case we said:

''A criminal contempt involves no element of personal injury. It is directed against the power and dignity of the court, and private parties have little if any interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings. [See, also, Rapalje on Contempts, sec. 21].'' Loc. cit. 214.

''A criminal contempt proceeding is generally held to be independent of the cause out of which the alleged contempt arose, although it is dependent for its foundation on the proceedings in such cause, and it is a proceeding at law. . . . It has been held that a proceeding for contempt to enforce a remedy in a civil action is a proceeding in that action, especially a contempt proceeding in a court of equity in aid of the court's original jurisdiction and in the enforcement of its decree; but it has been held that while the proceeding is auxiliary to the main case in that it proceeds out of the original case, it is essentially a new and independent proceeding in that it involves new issues and must be initiated by the issuance and service of new process.'' 17 C. J. S., Sec. 62, p. 78.

This contempt action was instituted by the relators-respondents to preserve a private right they had obtained in the cross-petition in the original action, namely, to prevent appellants and their attorneys from harassing relators-respondents with another action in regard

to the Langston estate and trust. It was not brought as an independent action but is a proceeding for the enforcement of the court decree and is auxiliary to the main case. There can be no doubt that this is civil contempt.

"A proceeding for civil contempt has as its object remedial punishment 'by way of a coercive imprisonment, or a compensatory [952] fine, payable to the complainant.'" City of Campbell, Mo. et al. v. Arkansas-Missouri Power Co., 65 Fed. 2d 425, 1. c. 427.

"Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed, unless and until he performs the affirmative act required by the court's order. . . . If imprisoned, as aptly said In re Nevitt, 117 Fed. Rep. 451, 'he carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by doing what he had previously refused to do." Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 442, 443, 31 Sup. Ct. 492, 498, 58 L. Ed. 797, 34 L. R. A. [N. S.] 874. We cited the above quotation with approval in the case of McNealey v. Rouse, Sheriff, 264 S. W. 383.

██ At the time we issued our citation, the case was pending in the District Court of the United States. As previously stated, relators-respondents' reply shows that that case was dismissed by the judge of that court, Honorable Albert L. Reeves, on their motion. That case is no longer pending in the United States District Court. Coercive methods to compel J. N. Burroughs to comply with judgments of this court are therefore unnecessary. He is not now violating the injunction.

It follows that this contempt proceeding should be dismissed. It is so ordered. All concur.