Russell Sherman STRICKLAND,
Respondent,

v.

Charles Edgar BARKER, Appellant.

No. 53219.

Supreme Court of Missouri,
Division No. 1.

Jan. 13, 1969.

38

John D. Henson, Poplar Bluff, for appellant.

Wangelin & Friedewald, Poplar Bluff, for respondent.

HOUSER, Commissioner.

Russell Sherman Strickland received a $23,000 jury verdict in his action against Charles Edgar Barker for personal injuries and property damage. Defendant has appealed from the judgment entered upon the verdict.

A northbound 2-ton truck driven by plaintiff on Highway T in Butler County collided with a southbound Chevrolet pickup truck driven by defendant. The vehicles met on a curve to plaintiff's right. The curve was banked downhill from west to east. The blacktop highway, the paved portion of which was 18 feet wide, was covered with snow. The northbound lane had been snowplowed by the state highway department. The southbound lane had not. The two vehicles collided in the northbound lane. There were skidmarks starting in the southbound lane of traffic, extending into the northbound lane and ending at the debris (dirt, glass and metal left on the roadway from the impact) deposited about 4 feet east of the center line. When the investigating officer arrived defendant's pickup truck was crossways of the road, completely blocking the southbound lane, with 3 feet of the vehicle extending into the northbound lane. Its left front was damaged. Plaintiff's 2-ton truck overturned in the ditch on the east side of the highway. Its left front was damaged.

*Defendant's testimony:* Defendant was familiar with the road, the curve, the way the road was banked, the snow and the snow plowing, which had been done on the north lane but not on the south. He knew that the roadway was slick. He was traveling about 16 m. p. h. on the right-hand side going south when he first saw plaintiff's truck, which at that time was 300 feet to the south. When defendant started into the curve ("a fairly sharp curve") he shifted into second gear because "there was quite a bit of ice," thinking that he could handle the truck better in second gear "and help slow it down, too, down to what I wanted." In answer to this question, "The minute you saw Mr. Strickland coming you knew you were going too fast so you shifted into second to help slow it down, didn't you?," defendant answered, "Before I got to the curve, right." Just before the vehicles reached each other defendant was slowing down "all [he] could." Defendant had slowed down "some" just before he "got to" plaintiff. Defendant's truck started sliding sideways. Defendant did not ever apply any brakes. He turned his steering wheel to the right but "nothing happened"—his truck "just kept sliding." When it first started slipping defendant was 50 or 60 feet from plaintiff. Defendant told an investigating officer, "I just slid into him."

*Plaintiff's testimony:* When plaintiff first saw defendant the latter was on his proper side of the road, traveling 25–30 m. p. h., 200–300 feet to the north of plaintiff's truck. By the time the vehicles "were getting pretty close together" defendant's truck, traveling approximately 25 m. p. h., started coming across the highway toward plaintiff's truck. Plaintiff "cut" his truck to the right as fast and as far as he could "to give [defendant] the road." Plaintiff's truck was on the edge of the ditch on the east when the collision occurred. The distance between the vehicles at the time defendant's truck started across the center line was 100 feet. In answer to this question, "When the vehicle driven by this defendant started across the center of the highway I will ask you whether or not it was skidding at the time?," plaintiff answered, "I couldn't see when he first started in, but when I realized that he was coming across I could see his wheels sliding. * * * He was angling across the highway." Defendant's truck was not "coming sideways" or "sliding sideways" when it crossed the center line. The back wheels "were staying pretty well in line with

the front wheels" as it slid across the center line.

Plaintiff's main verdict-directing Instruction No. 2 was as follows:

"Your verdict must be for the Plaintiff if you believe:

"First, Defendant:
    drove at an excessive speed under the circumstances and drove or skidded on the wrong side of the road, and

"Second, Defendant's conduct in respect submitted in Paragraph First was negligent, and

"Third, as a direct result of such negligence Plaintiff sustained damage, unless you believe Plaintiff is not entitled to recover by reason of Instruction Number 9."

In his first two points, which are dispositive of this appeal, appellant attacks Instruction No. 2 on the ground (1) that it is not an authorized Missouri Approved Instruction because it added the words "under the circumstances" to M.A.I. 17.03 [the approved instruction to be used in submitting excessive speed], thereby giving the jury a roving commission in determining negligence and thus completely destroying the very purpose and usefulness of the approved instructions; that such an attempt to improve on M.A.I. 17.03 violates M.A.I. 17.03 and violates the rules relating to instructions; (2) that Instruction No. 2 erroneously permitted the jury to find defendant negligent for having driven on the wrong side of the road when there was no evidence to support such a submission (all the evidence having indicated that defendant slid, slipped or skidded onto the wrong side of the road), and that the disjunctive submission "drove or skidded on the wrong side of the road" allowed the jury to find that skidding on the wrong side of the road constitutes negligence.

Respondent seeks to justify the addition of the words "under the circumstances" as a necessary modification in order to fairly submit the issues, in view of the icy conditions, the banked curve, the snowplowing done and that not done and defendant's admission that he was going too fast.

■ M.A.I. 17.03 did not need modification because of these evidentiary details. It was error to deviate from M.A.I. 17.03 by the addition of the words "under the circumstances." We need not act upon the presumption of prejudicial error raised thereby however, or determine whether respondent has made it perfectly clear that no prejudice could have resulted from such deviation, Brown v. St. Louis Pub. Serv. Co., Mo.Sup., 421 S.W.2d 255, 259, because Instruction No. 2 is clearly erroneous for three other reasons.

■ In the first place, Instruction No. 2 submits two separate and independent theories of recovery, in the conjunctive, namely: (1) excessive speed, and (2) coming onto the wrong side of the road. As a conjunctive submission it violates M.A.I. No. 1.02, which provides that "The practice of submitting dual or multiple theories of recovery or defense in the conjunctive is prohibited."

■ In the second place, there is no evidence to support a finding of one of the alternative bases for submission (2) above. That is to say, there is no evidence to support the submission of negligence in that defendant *drove* on the wrong side of the road. Defendant did not *drive* on the wrong side of the road in the conventional and commonly understood meaning of the word "drive." To "drive" an automobile means to impel or urge it to move; to direct its movements, course and direction. The driver's control over the movements of the vehicle is implicit in the term. A slipping, sliding or skidding vehicle, in contrast, is out of control. " 'Skidding' means that the wheels of a vehicle slip sideways, resulting in the inability of the driver to control the movement of the vehicle." Blashfield's Automobile Law and Practice, Third Edition § 105.38. All of the evi-

dence, including that of plaintiff, indicates that defendant's truck slid, slipped or skidded from its position in the southbound lane across the center line onto the northbound lane and into plaintiff's truck, and that after the skid started defendant had no control over its movements, course and direction.

█ Arguing that defendant "drove" the truck across the center line, respondent refers to the skidmarks. Skidmarks, however, are not evidence of the controlled "driving" of a vehicle. On the contrary, skidmarks indicate at least a momentary loss of that degree of control ordinarily associated with the concept of "driving." Respondent points to testimony that defendant's truck was not coming sideways when it crossed the center line; claims that it came across in a straight line, and suggests the definition of the word "skid" referred to in Jokisch v. Life and Casualty Ins. Co. of Tenn., Mo.App., 424 S.W.2d 111, 116, as "to slip sideways on the road" or to mean that "the wheels of a vehicle slip sideways." An analysis of the testimony in question reveals not that defendant's truck "came across in a straight line" or that it crossed the line in a normal operation but rather that the truck was "angling across" the highway and although the truck "wasn't coming sideways" and "the back wheels were staying pretty well in line with the front wheels," all of this was happening *while the truck was sliding across the center line*. Defendant's truck, under the evidence in this case, was not "driven" across the center line, and it was error to submit the case on that theory.

█ In the third place, Instruction No. 2 permits a finding of negligence based upon skidding, as one of the alternative bases for submission (2) above, without the necessary prerequisite finding that the skidding was caused by antecedent negligence. Respondent argues that the instruction hypothesizes excessive speed as the cause of the skidding, but it cannot reasonably be so taken and accepted. Even a casual reading of the instruction reveals that skidding was not submitted as having *resulted* from negligent excessive speed, but rather is submitted as an independent act. Nor was skidding submitted merely as a subsidiary evidentiary fact. That defendant "skidded on the wrong side of the road" was submitted as an alternative predicate of negligence in conjunction with and in addition to the predicate of negligent excessive speed (the other alternative being the submission that defendant "drove" on the wrong side of the road). Thus, taken as a whole, No. 2 submitted excessive speed AND either of two alternatives ("drove or skidded on the wrong side of the road").

In this respect this case differs from Davis v. Werremeyer, Mo.Sup., 377 S.W.2d 319, cited by respondent. In that case plaintiff's theory of recovery was that due to defendant's failure to keep a lookout defendant was suddenly confronted with the necessity of applying his brakes hard, as a result of which his automobile was caused to skid across the center line into collision. The challenged instruction (a lookout instruction) did not mention skidding but referred to the crossing over as "operation" of his automobile. This was held not to make the instruction bad, because coming over onto the wrong side of the highway was not submitted as an independent act of negligence, and the recital that defendant *operated* his automobile over and upon the wrong side of the highway (rather than "skidded") was nothing more than "connective tissue," i. e., preliminary matter leading up to the finding of a collision, and under the theory of recovery adopted by plaintiff skidding was merely a subsidiary evidentiary fact.

█ The vice of permitting a finding of negligence based on skidding on the wrong side of the road is that the mere skidding of a motor vehicle, without more, is not negligence and does not give rise to an inference of negligence. Girratono v. Kansas City Pub. Serv. Co., 363 Mo. 359, 251 S.W.2d 59, 63 [2]. See Committee's Comment, M.A.I. 17.13.

The skidding in this case was either purely accidental, or it had its inception in some act or omission of the defendant. The proximate cause of the collision will be found when the origin of the skidding is ascertained. Plaintiff's burden in this case is to establish by substantial evidence and to submit to the jury the requirement of a finding that the skidding and crossing of the center line resulted from an act or omission for which defendant is liable. Instruction No. 2 does not do so.

Appellant's last point: "The verdict of the jury is excessive and not supported by the evidence in that there were insufficient facts to support the assumption in the medical experts' testimony that plaintiff-respondent's heart attack on June 4, 1964 was a result of ·the accident on December 23, 1963, but was mere conjecture."

■ The claim· of excessiveness of the verdict is not developed in the argument. No cases are cited to demonstrate that the amount of this verdict is excessive. The claim of excessiveness has been abandoned.

■ On the question of the sufficiency of the evidence on the matter of causation of the heart attack appellant points to an admission that prior to the accident plaintiff had numbness in his fingers and left arm and evidence that plaintiff gave a doctor a history of poor health since 1960; argues that one of the doctors testified that the injuries complained of were not disabling and that the heart damage was not the result of trauma, and that the hypothetical question on causation failed to include the admission of prior poor health and numbness. Defendant objected to the hypothetical question on the ground that "it assumes facts that are not in evidence, it omits facts that are in evidence, it does not have the proper foundation, it does not properly hypothesize all the facts necessary on which to give an answer." Counsel having failed to particularize by pointing out that the foregoing matters were omitted from the question, the trial court was justified in overruling the objection. Scheipers v. Missouri Pac. R. Co., Mo.Sup., 298 S.W. 51, 54, and other cases cited in Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 402 [2]. And see Schrum v. Ciscell, Mo.App., 403 S.W.2d 657, 660 [2].

■ On the merits, a doctor whose qualifications are not challenged testified in answer to the hypothetical question that in his opinion, based upon reasonable medical certainty, the heart attack *was caused* by the accident. Under Schaefer v. Rechter, Mo.Sup., 290 S.W.2d 118, this testimony established a sufficient causal connection to justify submission of the heart condition as an element of damages and we find no error in this connection. An appellate court is prohibited from ordering a new trial as to issues in which no error appears. Civil Rule 83.13(c), V.A.M.R.; § 512.160 (3), RSMo 1959, V.A.M.S. Accordingly, the issue of damages need not be retried.

For error in Instruction No. 2 the judgment is reversed and the cause remanded for a new trial on the single issue of liability. The verdict for $23,000 shall be held in abeyance pending trial of the issue of liability. Jokisch v. Life and Casualty Ins. Co. of Tenn., Mo.App., 424 S.W.2d 111, 117.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.