Martyn G. **MEYERS**, Respondent,

v.

**SOUTHERN BUILDERS, INC., a Missouri corporation, and Lance S. Wheelis, Appellants.**

No. 22499.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 4, 1999.

Motion for Transfer to Supreme Court Denied Nov. 23, 1999.

Application for Transfer Denied Jan. 25, 2000.

Combined Insurance Company of America

dated July 11, 1991.

Lee M. Baty, Brian J. Doherty, Field, Gentry & Benjamin, P.C., Kansas City, for appellants.

Thomas Strong, Steven Harrell, James A. Burt, Springfield, for respondent.

CROW, Presiding Judge.

On September 24, 1996, Martyn G. Meyers, age 43, was operating a motorcycle southbound on Glenstone Avenue in Springfield. Lance S. Wheelis, an employee of Southern Builders, Inc. ("SBI"), was operating a truck northbound on Glenstone. Wheelis turned west into a construction area where he was working. In that maneuver, Wheelis's truck crossed the southbound lane in front of Meyers's motorcycle. The vehicles collided.

Meyers sued Wheelis and SBI for bodily injuries Meyers allegedly sustained in the collision. The parties stipulated that at the time of the collision, Wheelis "was acting in the course and scope of his employment for [SBI]."

At the conclusion of a five-day trial, a jury returned a verdict assessing 73 percent fault to Wheelis and SBI ("Defendants") and 27 percent to Meyers. The jurors found Meyers's damages, disregarding any fault on his part, were $1,117,800.

Consistent with the verdict, the trial court entered judgment for Meyers against Defendants for $815,994. Defendants appeal, presenting five assignments of error.

Defendants' first complaint is that Meyers's lawyer, during opening statement and again in closing argument, made a "per diem" request for noneconomic damages.

This court first addresses Defendants' grievance about the opening statement. Defendants' brief refers this court to two pages of the transcript where, according to Defendants, Meyers's lawyer voiced a per diem request.

■ This court has examined the pages cited by Defendants and has espied no objection, request to strike, or motion for mistrial by Defendants. Inasmuch as Defendants remained mute during the allegedly improper statement, Defendants preserved no issue about it for review. *Smith v. Ohio Millers' Mutual Fire Ins. Co.*, 330 Mo. 236, 49 S.W.2d 42, 46[8] (banc 1932).

This court next turns to the closing argument. There, this dialogue occurred.

"MR. STRONG [1]: . . . If it were just a little bitty job to assess for non-economic damages, we'll just pick an hour. Now, it's going to be an hour when he's at work, or it's going to be an hour when he's in the courtroom, or it's going to be in the middle of the night, maybe he's asleep and maybe he's rolling around in pain. Whatever hour it is, folks, you on the jury just have to assess damages for an hour.

If someone said $3.00. Oh, my, that's outrageous. I don't think so. But in this case, you see, you have to assess it for a lifetime. And there will be some hours in his life when he's relatively comfortable. And there will be some hours in his life when he's extremely uncomfortable. But his life expectancy, as I calculate it, is 325,872 hours. And we believe that a fair sum for that amount of time is $950,000.00. We think if you award that sum for thirty-seven years and two months, 325,872 hours, it should be a no greater than awarding Marty $3.00 just for an hour.

And so we have a verdict form. And we—

1. Meyers's lawyer.

MR. KIEFER [2]: Your Honor, may we approach?

THE COURT: All right.

(Counsel for the Plaintiff, counsel for the Defendants, and the court reporter approached the bench and the following proceedings were entered of record):

MR. KIEFER: Your Honor, we object on the grounds that he's using a per diem argument, which is not authorized under Missouri law. We would ask that the jury be instructed to disregard the last comment by Mr. Strong and that he be instructed not to pursue any further with a sum which is related to any particular time of day or for each day or for each hour or whatever. We think it's improper. We have to, at this point, move for a mistrial because of the improper comments."

After a brief discussion, the trial court announced: "I'm going to overrule the objection and ... overrule the motion for mistrial."

A scholarly and eloquent discussion of the "per diem" or "mathematical formula" technique of arguing damages for pain and suffering appears in *Faught v. Washam,* 329 S.W.2d 588, 601–04 (Mo.1959). There, the plaintiff's lawyer told the jury:

"In considering what is an adequate sum for this young man, suppose I was to meet one of you ladies on the street and I say to you, 'I want to offer you a job and I want to tell you a little bit about this job before you say you are going to accept it; one peculiar thing, if you take it you have to keep it for the rest of your life, you work seven days a week, no vacations, work daytime and night. The other thing is, you only get paid $3.00 a day. Here is your job— your job is to suffer Mr. Faught's disability.' "

*Id.* at 601–02.

The trial court in *Faught* overruled the defendant's objection to the argument. *Id.* at 602. On appeal, the Supreme Court of

Missouri held the ruling erroneous and, together with other errors, amounted to cumulative prejudice requiring reversal. *Id.* at 604[29] and [30].

Nineteen years later, the Supreme Court of Missouri decided *Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291 (Mo. banc 1978). There, the plaintiff's lawyer argued to the jury:

" ... This boy was in the hospital for 40 days and we think, and we suggest this, for this 40 days in the hospital, we think $4,000 to $4,500 is a modest sum for the kind of agony Frankie underwent with five operations.... Now, after he came home from the hospital he was in a cast.... And for that period of time, being in that cast for 34 days, we say somewhere in the range of $3,400 to $3,600 is a modest sum.... Then excluding all this up to the present time, 413 days have elapsed, and in that period of time this is the way Frankie's leg has looked,.... For those to the present time, 413 days, we say eight to nine thousand dollars is a modest sum.

What about the future? ... You can see the way he has to take care of his leg when he has done nothing but sit in the courtroom. Your verdict must be for life and for the future, these 23,701 days [64.89 years] we think a fair amount would be $71,103 to $80,000, and either column you use (writing on large paper before the jury)—it ranges from $86,503 to $97,100, and we say that this is a small amount for a lifetime of injury."

*Id.* at 299.

As in *Faught,* the opinion in *Graeff* thoroughly discussed case law regarding "per diem" arguments, *id.* at 301–03, and held the argument was "not within the limitations and objections of *Faught.*" *Graeff,* 576 S.W.2d at 303[3]. The opinion explained:

2. Defendants' lawyer.

"The posture in which the plaintiff's counsel in this case offered the figures is such that he did not refer to any per day or per hour amount but merely suggested a lump sum for the specific periods of hospitalization, the time in the cast, the pain and suffering for the period from injury to trial, and for future life expectancy. The argument was not broken down into minutes, hours or days. There was no 'job offer' argument as in *Faught.* Furthermore, there is a specific finding by the trial court that the verdict was not excessive.

*Chambers* [*v. Kansas City*, 446 S.W.2d 833 (Mo.1969) ]." [3]

*Graeff*, 576 S.W.2d at 303[3].

In the instant appeal, Defendants maintain the argument of Meyers's lawyer was like the one condemned in *Faught,* as Meyers's lawyer (according to Defendants) argued Meyers "should be awarded $3.00 per hour for non-economic damages."

Meyers insists the argument was not a "per diem" argument in that the argument did not implore the jury to "use $3.00 as a benchmark for assessing damages for a lifetime, nor was the jury asked to multiply the remaining hours of [Meyers's] life by the $3.00 figure." Meyers points out such a multiplication would not have resulted in

**3.** In *Chambers,* the defendant argued on appeal that the plaintiff's lawyer urged the jury to use a "mathematical formula" in computing damages. *Id.* at 840. Because the defendant in *Chambers* did not object, the defendant sought plain error relief. *Id.* Denying relief, the Supreme Court said: "[D]efendant has made no point in its brief on excessiveness of the verdict.... Our courts have held rather distinctly that errors in argument ... which would only go to the amount of damages, will not be deemed prejudicial unless a point is made on excessiveness of the verdict." *Id.* at 840–41[12].

**4.** According to this court's multiplication, $3.00 per hour for 325,872 hours amounts to $977,616. The $950,000 Meyers's lawyer asked the jury to award for noneconomic damages is 97.2 percent of $977,616.

**5.** *Faught* observes that were such an argument permissible, it would be just as logical, and equally as fair, to permit "expert wit-

$950,000, the amount his lawyer requested for pain and suffering.[4]

As this court grasps *Faught,* 329 S.W.2d at 603, the perceived evil in a "per diem" or "mathematical formula" argument is that it "is calculated and designed to implant in the jurors' minds definite figures and amounts not theretofore in the record (and which otherwise could not get into the record) and to influence the jurors to adopt those figures and amounts in evaluating pain and suffering and in admeasuring damages therefor." [5] Thus, the question this court must resolve is whether the argument of Meyers's lawyer in the instant case implied the jurors should use $3.00 per hour—an amount with no evidentiary support—to calculate Meyers's non-economic damages for the anticipated 325,-872 hours remaining in his life.

In answering that question, this court notes:

■■■ 1. In *Faught,* the plaintiff's lawyer asked the jurors to consider whether they would accept the job of suffering the plaintiff's disability for $3.00 per day, 329 S.W.2d at 601–02, whereas in *Graeff* the plaintiff's lawyer mentioned no dollar amount as compensation for any unit of time,[6] but instead grouped together the

nesses" to evaluate pain and suffering on a per diem or per hour basis—a "revolutionary innovation" according to *Faught.* 329 S.W.2d at 603.

**6.** At the end of Meyers's brief, he attached two typewritten pages which, according to the brief, are a "transcript of the *Graeff* closing argument." In examining the attachment, this court was mindful that Thomas Strong, the lawyer representing Meyers, represented the plaintiff in *Graeff.* 576 S.W.2d at 294. The first page of the attachment contains, *inter alia,* the following passage from the plaintiff's argument in *Graeff*:

"It would be easy, wouldn't it if all you had to do would be to say today, three dollars? Could anyone find too much fault, say, 'Oh, that's too generous.' "

Although this court is confident the attachment is authentic, this court cannot consider it because it is not part of the record in the

aggregate days the plaintiff was hospitalized, the aggregate days he was in a cast, the aggregate days thereafter until trial, and the aggregate days he was expected to live after trial, and suggested a specific sum for each category. 576 S.W.2d at 299.

2. In the instant case, Meyers's lawyer told the jury he believed $3.00 would not be an outrageous amount to award Meyers were the jury required to assess noneconomic damages for one hour. Immediately thereafter, Meyers's lawyer told the jury Meyers's "life expectancy" was 325,-872 hours, and a "fair sum for that amount of time is $950,000.00." As noted earlier,[7] that sum is 97.2 percent of the product of multiplying $3.00 by 325,872.

Meyers insists the purpose of his lawyer's argument was not to coax the jurors into using a mathematical formula to compute his damages for noneconomic loss, but was instead to "emphasize the daunting task the jury would face in assessing intangible damages for a lifetime of pain."

■ Regardless of counsel's intent, the argument (a) implied $3.00 would not be an outrageous amount for one hour of noneconomic damage, (b) informed the jury Meyers would live 325,872 hours, and (c)· proclaimed an award of $950,000—97.2 percent of the product of multiplying item "(a)" by item "(b)"—would be a "fair sum for that amount of time." Consequently, irrespective of the strategic objective of the argument, this court holds Meyers's

lawyer crossed the forbidden line established by *Faught*, 329 S.W.2d at 603–04.

This court recognizes a powerful contention can be made that inasmuch as (a) MAI 2.01 [1996 Revision] tells the jurors that what is said in closing arguments is not to be considered as proof of a fact,[8] and (b) as explained in *Faught*, 329 S.W.2d at 602[27], there can be no established standard, fixed basis, or mathematical rule by which damages for pain and suffering may be calculated, each side should be allowed to present such arguments on noneconomic damages as that side believes persuasive, leaving the jury to assess the logic and plausibility thereof.

■ However, this court is not writing on a clean slate. This court is constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri. Mo. Const., Art. V, § 2 (1945); *Stephens v. Brenton*, 920 S.W.2d 109, 111[2] (Mo.App. S.D.1996). According to this court's analysis, that decision is *Faught*, 329 S.W.2d at 603–04.

■ This court therefore holds the trial court erred in overruling Defendants' objection to the segment of Meyers's lawyer's argument quoted earlier in this opinion. Having reached that conclusion, this court must decide whether that ruling, coupled with the denial of Defendants' motion for mistrial immediately thereafter, compels reversal.

Citing *Chambers v. Kansas City*, 446 S.W.2d 833 (Mo.1969),[9] Meyers declares

instant case. Documents attached to a party's brief but not contained in the legal file are not part of the record and will not be considered on appeal. *Choate v. Natvig*, 952 S.W.2d 730, 733[5] (Mo.App. S.D.1997); *Strycharz v. Barlow*, 904 S.W.2d 419, 426[19] (Mo.App. E.D.1995). Furthermore, the above-quoted passage is not set forth in the *Graeff* opinion, hence no one reading the opinion (except the parties and lawyers involved in *Graeff*) would know the plaintiff's lawyer uttered it. Because a court speaks only through its records, *Odom v. Langston*, 358 Mo. 241, 213 S.W.2d 948, 950[1] (banc 1948), and the *Graeff* opinion does not mention the above-quoted passage, this court cannot accept *Graeff* as authority for Meyers's premise that his lawyer's

argument in the instant case was permissible. To do so would confer on *Graeff* a precedential effect for those involved in it that would differ from its precedential effect for everyone else.

7. Footnote 4, *supra*.

8. MAI 2.01 [1996 Revision] was given in the instant case as Instruction No. 1.

9. *Chambers* is cited at the end of the passage from *Graeff*, 576 S.W.2d at 303[3], quoted earlier in this opinion. The holding in *Chambers* is discussed in footnote 3, *supra*.

Missouri courts have held on numerous occasions "that a condition precedent to the granting of a new trial because of an improper *per diem* argument must necessarily encompass the assertion that the verdict was excessive."

Defendants respond that *Chambers* was overruled in *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10 (Mo. banc 1994).

In *Tune*, the Supreme Court found the trial court erred in overruling an objection by the defendant to certain remarks by the plaintiff's lawyer during the "rebuttal" segment of his argument. *Id.* at 16–20 (sub-part A of part IV of the opinion). The court then proceeded to determine whether the error was prejudicial. *Id.* at 20–22 (sub-part B of part IV of the opinion). On that subject, *Tune* said:

> "One line of cases supports the proposition that argument on the issue of damages can be prejudicial only if there is an excessive verdict. *See, e.g.* ... *Chambers v. Kansas City*, 446 S.W.2d 833, 841 (Mo.1969) ... *Faught v. Washam*, 329 S.W.2d 588, 602 (Mo. 1959).... On the other hand, in *Lester v. Sayles*, 850 S.W.2d 858 (Mo. banc 1993), this Court stated that the party responsible for error relating to argument on the issue of damages 'should be charged with a presumption that the error was prejudicial'. *Id.* at 864....
>
> We adopt the rule derived from *Lester* that the party responsible for error relating to argument on the issue of damages is charged with a rebuttable presumption that the error was prejudicial. Cases holding that error in argument on the issue of damages is prejudicial only if there is an excessive verdict are over-

ruled to the extent they are inconsistent with this opinion." [10]

*Tune*, 883 S.W.2d at 20–22.

■ As *Tune* is the most recent controlling decision of the Supreme Court of Missouri regarding the consequences on appeal when a trial court errs in overruling an objection to a party's final argument about damages, this court presumes the argument of Meyers's lawyer was prejudicial to Defendants and assigns Meyers the duty of rebutting that presumption.[11]

Meyers endeavors to fulfill that duty by arguing the verdict (1) was not excessive and (2) was "well below" the amount he requested.

According to Meyers, he presented evidence of these special damages:

| | |
|---|---|
| Medical expenses prior to trial | $ 23,497 |
| Future medical expenses | 50,576 |
| Lost household contributions | 82,043 |
| Lost earnings (retirement at 65) | 627,783 |
| Lost earnings (retirement at 70) | 785,607 |
| Lost fringe benefits (retirement at 65) | 138,552 |
| Lost fringe benefits (retirement at 70) | 173,384 |

Meyers's brief asserts—and this court's arithmetic confirms—the alleged losses set forth above total $922,451 based on retirement at 65, and $1,115,107 based on retirement at 70. Furthermore, as we have seen, Meyers asked for noneconomic damages of $950,000, thereby seeking a total award between $1,872,451 and $2,065,107.

Emphasizing that the jury assessed his damages at $1,117,800, Meyers maintains the jury "awarded almost nothing for pain and suffering." Consequently, says Meyers, the record rebuts any presumption that Defendants were harmed by Meyers's lawyer's argument.

This court disagrees.

---

10. As this court understands the above-quoted passage from *Tune*, it did not impair *Faught's* holding that a "per diem" or "mathematical formula" argument is improper.

11. Meyers avers *Lockwood v. Schreimann*, 933 S.W.2d 856, 862 (Mo.App. W.D.1996), supports the proposition that in order to preserve a point of error relating only to damages, an appellant must brief a separate point demon-

strating that the verdict was excessive as a result of that particular allegation of error. *Lockwood* is inapposite, as it did not pertain to an error during argument, but instead dealt with an alleged error during cross-examination of a witness. *Id.* Furthermore, to the extent—if any—that *Lockwood* conflicts with *Tune*, this court is constitutionally bound to follow *Tune*. *Stephens*, 920 S.W.2d at 111[2].

At the time of the collision, Meyers was residing in Missouri, having moved here from California in 1994. He was working for Manpower, assigned to the "industrial classification" which encompasses "warehouse, shipping and receiving, [and] assembly and production type work." The highest wage he earned at Manpower was $7.00 per hour. He received no fringe benefits.

The bulk of Meyers's evidence about lost future earnings was not, however, based on that employment. He presented evidence that he had worked in the "pest control industry" in California for seventeen years before moving to Missouri. At the time of the collision, he was planning to return to California within two years, when his youngest daughter graduated from high school. His goal was to resume working in the pest control industry where his earnings would exceed those at Manpower.

Based on that evidence, an economics professor calculated Meyers's future lost earnings on the assumption Meyers would have earned $41,000 per year in California. Using that hypothesis, the professor projected the lost earnings set forth earlier in this opinion.

■ However, the jury was not compelled to believe Meyers's evidence regarding his future plans, nor was the jury required to accept the professor's projections, as a jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part. *Capriglione v. Southwestern Bell Telephone Co.*, 376 S.W.2d 205, 206[2] (Mo. 1964). Meyers's optimism—and that of the professor—that Meyers could have reclaimed a $41,000–per–year job in California was not binding on the jurors.

The jury obviously found some of Meyers's presentation about damages unpersuasive. As noted earlier, Meyers's evidence showed special damages totalling

between $922,451 and $1,115,107 which, combined with the $950,000 he requested for noneconomic damages, totalled between $1,872,451 and $2,065,107. Yet, the jury assessed Meyers's damages at $1,117,800. How much of that represented special damages and how much represented noneconomic damages is forever consigned to speculation. Nonetheless, the jury inferably found Meyers sustained some noneconomic damage, as the highest amount of special damages arguably supported by his evidence was $1,115,107. If the jury discounted Meyers's evidence about lost future earnings, the jury must have assessed a substantial sum for noneconomic damage.

Because it is impossible to ascertain how much the jury assessed for Meyers's noneconomic damage, this court holds Meyers cannot rebut the presumption of prejudice arising under *Tune*, 883 S.W.2d at 22[19]. Consequently, Defendants are entitled at least to a new trial on the issue of damages. *Spalding v. Robertson*, 357 Mo. 37, 206 S.W.2d 517, 523[12] (1947). However, Defendants are not entitled to a new trial on the issue of liability unless the trial court committed reversible error regarding that issue, as Rule 84.14, Missouri Rules of Civil Procedure (1999), bars an appellate court from ordering a new trial "as to issues in which no error appears." *Cf. Strickland v. Barker*, 436 S.W.2d 37, 42[14] (Mo.1969).[12]

Accordingly, this court's next task is to determine whether Defendants preserved and briefed any reversible error affecting the issue of liability.

■ Defendants' sole claim of error regarding that issue is their fifth point, where they maintain the trial court wrongly excluded a part of Exhibit AA.

Exhibit AA is a typewritten document from the records of the hospital where Meyers was examined by Nicholas F.

**12.** A holding in *Strickland* on an unrelated point was overruled in *Friederich v. Chamberlain,* 458 S.W.2d 360, 365–66 (Mo. banc 1970).

Shoults, M.D., after the collision. The document reads, in pertinent part:

> "HISTORY OF PRESENT ILLNESS: This is a 43 year-old male who apparently was involved in a MVA at which time he was the rider of a motorcycle with a helmet, striking a vehicle at approximately 35 miles per hour."

The issue about Exhibit AA arose during a recess after Meyers began presenting evidence. His lawyer moved the trial court in limine to bar the statement that "Marty was going thirty-five miles an hour." Meyers's lawyer argued: "[T]hat is not admissible ... unless Marty made the statement. And there is no indication in the medical records that Marty made that statement. It is hearsay on hearsay."

After an extended debate between counsel, the trial court ruled that the phrase "striking a vehicle at approximately 35 miles per hour" would be stricken from Exhibit AA and Defendants' lawyers could not ask Meyers whether he made such a statement "unless [Defendants' lawyers] have some reason to convince this Court that you do have a prior inconsistent statement that's admissible in evidence."

For ease of discussion, the segment of Exhibit AA identified in the two preceding paragraphs is henceforth referred to as "The Disputed Statement."

During Defendants' case, they offered The Disputed Statement in evidence.

Meyers renewed his objection that there was no evidence he uttered The Disputed Statement.

Asked by the trial court to identify "the author of this statement," one of Defendants' lawyers replied: "The author of the statement is Nicholas Schultz [sic]."

The trial court refused the offer.

Defendants maintain the trial court erred in that The Disputed Statement was "an admission of [Meyers] regarding his speed at the time of the accident and was a statement made in connection with medical care." The lone case cited by Defendants

in support of their argument is *Breeding v. Dodson Trailer Repair, Inc.,* 679 S.W.2d 281 (Mo. banc 1984).

Defendants misunderstand *Breeding.* The issue there was whether a portion of a hospital record displaying a statement *uttered by the plaintiff* to his physician regarding the circumstances of the collision that caused the injury for which the physician was treating the plaintiff was admissible in evidence. *Id.* at 284. In *Breeding,* the *plaintiff* offered the statement, and the *defendant* objected because the statement was "inadmissible hearsay." *Id.*

The Supreme Court held in *Breeding* that because the statement was made *by the plaintiff* and entered in the hospital records for the purpose of prescribing treatment, the trial court did not err in receiving the statement in evidence. *Id.* at 284–85.

The obvious difference between *Breeding* and the instant case is that the statement in issue in *Breeding* was made *by the plaintiff,* whereas there was no showing in the instant case that The Disputed Statement was uttered by Meyers.

Indeed, during the debate about The Disputed Statement, Meyers's lawyer stated: "[I]f they want to ask [Meyers] how fast he was going or even, generically, did you ever tell anyone that you were going thirty-five miles an hour at the point of impact, I have no objection to that, because he's going to say no." While Meyers's lawyer's comment is not evidence that Meyers did not utter The Disputed Statement, it demonstrates that, unlike *Breeding,* there was no concession by Meyers that he told Shoults (or anyone else) he was traveling thirty-five miles per hour when the collision occurred.

The absence of merit in Defendants' first point is demonstrated by *Jones v. St. Louis Housing Authority,* 726 S.W.2d 766 (Mo.App. E.D.1987). There, over the defendants' hearsay objection, the plaintiff's lawyer read the jury portions of hospital records setting forth an account of the

incident that claimed the life of the decedent (the plaintiff's son). *Id.* at 775. The appellate court held the evidence inadmissible, as the decedent could not have supplied the information because he was comatose upon arrival at the hospital, and the plaintiff could not have supplied the information because she did not see the incident. *Id.* The opinion explained:

"The rationale of *Breeding* [*v. Dodson Trailer Repair, Inc.*, 679 S.W.2d 281 (Mo. banc 1984) ] . . . is not present here because the information was from an unknown source[.]"

*Jones,* 726 S.W.2d at 776.

Consistent with *Jones,* this court holds the trial court in the instant case did not err in striking The Disputed Statement from Exhibit AA.

■ Defendants also maintain the trial court erred in refusing to allow them to cross-examine Meyers about The Disputed Statement. The fatal flaw in that complaint is that Defendants never made an offer of proof as to what Meyers would say if cross-examined about it.

The general rule is that nothing is preserved for appellate review when a trial court rejects evidence in the absence of an offer of proof. *Lockwood v. Schreimann,* 933 S.W.2d 856, 862[11] (Mo.App. W.D. 1996). While a narrow exception is spelled out in *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883–84[14] (Mo. banc 1985), the exception does not apply here because the record does not reveal what the excluded testimony would have been, nor does the record demonstrate the excluded testimony would have helped Defendants.

For the foregoing reasons, Defendants' first point is denied, hence Defendants are not entitled to a new trial on the issue of liability.

Two of Defendants' three remaining claims of error pertain to issues unlikely to arise at the damages retrial.

Defendants' second point complains the trial court erred in barring the testimony of a "vocational rehabilitationist" Defendants wanted to present. The trial court barred the testimony because Defendants disclosed the identity of the witness to Meyers only twelve days before trial, and the witness was available for deposition only four days before trial. Additionally, the witness was available only in Kansas City; trial was held in Springfield.

Inasmuch as the witness's identity has now been known to Meyers's lawyer for a year and a half, and there should be ample time between this court's mandate and the damages retrial for Meyers's lawyer to take the witness's deposition, the issue in Defendants' second point is moot.

Defendants' third point:

"The trial court erred in overruling [Defendants'] objections to [Meyers's lawyer's] closing argument regarding [Defendants'] failure to call any expert witnesses because such argument is improper in that [Defendants'] expert witnesses had been excluded from appearing at trial by [Meyers's] motion and such witnesses were equally available to both parties."

The above complaint is linked to Defendants' second point, as it pertains to the witness referred to in that point plus another witness who was disclosed to Meyers's lawyer at the same time. For the reasons set forth in the discussion of Defendants' second point, the issue raised in their third point is unlikely to arise at the damages retrial, hence it is moot.

Defendants' fourth point—the only one not yet addressed—avers the trial court erred in allowing the economics professor (referred to in this opinion's discussion of Defendants' first point) to testify about Meyers's potential future earnings in California and his loss of anticipated future fringe benefits. According to Defendants, such testimony lacked "proper foundation" and was "speculative."

The professor's testimony was based in part on Meyers's physical condition and future employment possibilities at time of trial. Because those circumstances may be different when the damages issue is retried, this court declines to address Defendants' fourth point.

The portion of the judgment assessing 73 percent fault to Defendants and 27 percent to Meyers is affirmed. The portion of the verdict assessing Meyers's damages at $1,117,800 is set aside, and the portion of the judgment awarding Meyers $815,994 against Defendants is reversed. This case is remanded to the trial court for a new trial on the issue of damages alone.

SHRUM, J. concurs.

PARRISH, J., concurs and files concurring opinion.

PARRISH, Judge, concurring.

I concur. I write separately to comment on the issue raised in appellants' Point IV. Point IV asserts that the trial court erred in permitting respondent's expert, an economist, to consider potential earnings, including suggested fringe benefits, that respondent postulated would be available from employment in California. Appellants suggest that the expert witness' testimony lacked proper foundation and was speculative; that the trial court erred in receiving it.

The principal opinion aptly acknowledges that in the event of retrial, evidence concerning respondent's future earnings may be different from that previously presented. For that reason Point IV was not addressed.

Appellants cite *Haley v. Byers Transp. Co.*, 414 S.W.2d 777 (Mo.1967), and *Lippard v. Houdaille Industries, Inc.*, 715 S.W.2d 491 (Mo. banc 1986), for the proposition that the value of loss of future earnings may not rest on speculation. Although the basis for the expert testimony in this case differs from that in *Haley* and in *Lippard*, the principle for which those cases are cited is sound. In the event of a retrial, the sufficiency of the foundation on which an expert might project the value of potential future earnings would warrant the trial court's close review.