**Mary FRANKEL, Executrix of the Estate of Harry Frankel, Deceased, Plaintiff-Respondent,**

v.

**Milton A. MOSKOVITZ, Defendant-Appellant.**

**No. 34755.**

Missouri Court of Appeals, St. Louis District, Division One.

Dec. 11, 1973.

Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for defendant-appellant.

Ralph W. Kalish, St. Louis, for plaintiff-respondent.

DOWD, Chief Judge.

A civil contempt case. The plaintiff filed a petition on April 3, 1961 praying that defendant be found in contempt of court for disregarding the court's decree and judgment entered July 3, 1958. The Court found defendant in contempt, ordered an accounting, and upon receipt of the referee's report, entered judgment for plaintiff. While both parties filed exceptions to the referee's report, only defendant appealed from the judgment entered pursuant to that report.

The facts in this case revolve around many of the transactions involved in Re-

public Engineering and Manufacturing Company v. Moskovitz, 376 S.W.2d 649 (Mo.App.1964).[1] Reference to that case may prove helpful although we will discuss the pertinent facts here.

The defendant is considered an expert in the field of ball joints for automotive wheel suspension assemblies. In 1950 plaintiff and defendant organized a corporation named Republic Engineering and Manufacturing Company. This company was operating at a loss in 1953 when Moog Industries entered into negotiations with the company and its owners. As a result of these negotiations, the name of the company was changed to Neo-Tech Engineering and Manufacturing Company; Moog formed a wholly owned subsidiary which it called Republic Engineering and Manufacturing Company (hereinafter Republic); and two contracts were executed on June 17, 1953. The first contract involved the sale by Neo-Tech of its physical assets and goodwill to Republic. The second contract was a license agreement entered into by Moskovitz, Frankel and Neo-Tech as licensors, and Republic as licensee. This license agreement granted Republic the exclusive right to make, use and sell certain automotive devices designed, or to be designed in the future, by Moskovitz, in consideration of the promise of Republic to pay royalties.

On June 15, 1953, two days before the execution of the aforementioned license agreement, plaintiff, defendant and Neo-Tech entered into a contract by which their respective rights and obligations subsequent to the issuance of the license were established. Defendant agreed that he would assign to Neo-Tech, or in the alternative to plaintiff, at the latter's direction, a 50% interest in all future patents issued and patent applications applied for and any improvements thereon concerning certain enumerated automobile devices, including ball joint suspensions.

On January 4, 1957 plaintiff filed a petition in this action [2] by which he alleged that he and defendant had entered into a license agreement with Imerman Screw Products Company to manufacture ball joints for the original equipment market (as opposed to the replacement market); that Imerman had issued a check pursuant to that license agreement payable to both plaintiff and defendant; and that defendant had refused to endorse said check although numerous attempts to obtain his signature were made by plaintiff. Plaintiff prayed for an injunction ordering defendant to endorse the check so that the proceeds may be divided equally between plaintiff and defendant.

A motion by Leon Fine to intervene as a third party plaintiff in the original injunction action was sustained. Since no portion of this appeal is affected by this intervention, no further reference to it will be made.

Defendant, by his answer, sought to have the agreement with plaintiff declared null and void.

Plaintiff and defendant filed a stipulation by which they settled all issues between them in the pending proceeding. In accordance with this stipulation, the court entered a consent decree on July 3, 1958 adjudging the contract of June 15, 1953 to be a valid agreement, supported by adequate consideration; ordering Moskovitz to assign to Frankel a fifty percent interest in a long list of designated patents and patent applications; and ordering that neither party transfer or license his interest without the consent of the other party in any patent or patent application on any structure denominated in the June 15, 1953 contract.

1. Certiorari to the Supreme Court denied, 379 U.S. 837, 85 S.Ct. 72, 13 L.Ed.2d 44 (1964).

2. Since a contempt proceeding is ancillary to the action from which the contempt arose [Odom v. Langston, 358 Mo. 241, 213 S.W.2d 948 (banc 1948)] this injunction suit and the contempt proceeding will be referred to as one action.

The court entered its findings of fact and conclusions of law in this contempt proceeding on March 2, 1967, which may be summarized as follows:

1. Plaintiff and defendant were parties to a consent decree entered July 3, 1958.

2. Paragraph VII of that decree required defendant to assign to plaintiff a 50% interest in "any patents or reissue patents granted on any of the aforesaid applications * * * and any improvements thereon, together with any patent application now filed or to be made in the future * * * on * * * ball joint suspensions * * *."

3. Defendant, through his wholly controlled corporation, Micro-Precision Engineering Company, sold ball joints which incorporated new features developed by defendant.

4. These new features constitute "improvements" within the context of the previous decree.

5. Defendant refused to assign to plaintiff a 50% interest in these developments or in the patent applications presented to defendant by Republic Engineering and Manufacturing Company for execution and later filed by the company pursuant to 35 U.S.C. 118.[3]

6. Defendant, at his own election, used these improvements as part of the assets of Micro-Precision, and as his own, failing to give plaintiff a 50% interest in them and failing to divulge and reveal his developments to plaintiff.

7. Such failure by defendant is a "direct and contumacious violation of said decree."

The court proceeded to enter the following order and judgment:

"A. Defendant Milton A. Moskovitz is hereby enjoined, ordered and directed not to make any substantial or significant changes in the conduct, ownership, financial affairs (or assets) of Micro-Precision Engineering Company until the accounting hereinafter ordered has been completed, approved and satisfaction made of any judgment entered pursuant thereto.

"B. Defendant Milton A. Moskovitz shall account and pay 'over unto Plaintiff-petitioner Frankel one-half (½) of all profits, if any, however realized and in whatever form or manner obtained and held, made by defendant Milton A. Moskovitz and or his wholly controlled corporation, Micro-Precision Engineering Company, in the sale of balljoint suspension devices incorporating the developments of defendant Moskovitz as exemplified by and embodied in Exhibits G (ie F–114A) and J * * *.

"C. The costs of this action, including all referee's fees, and including Plaintiff-petitioner Frankel's attorney's fees in the amount of Seven Thousand ($7,000.00) Dollars are hereby assessed against defendant Milton A. Moskovitz.

"D. The Court retains jurisdiction of this cause to make such further orders, pursuant to the judgment herein as the Court may deem proper and just in the premises."

The referee was appointed and conducted hearings in the accounting. The referee's report was filed November 1, 1971. Both parties filed exceptions to this report. The court adopted the referee's report and entered judgment pursuant thereto on April 21, 1972. Defendant brought this appeal.

This appeal may, for simplicity, be divided into two main portions. One deals with alleged errors in the amount of plaintiff's award and will be discussed later. The

3. This section provides a means by which someone with a proprietary interest may make application for a patent on behalf of an inventor who has refused to execute such an application.

other is defendant's contention that plaintiff is not the real party in interest.

Defendant bases his contention that plaintiff is not the real party in interest on the holding in Republic Engineering and Manufacturing Company v. Moskovitz, *supra*. That case held that the license agreement granted by Frankel and Moskovitz to Republic, giving Republic the rights to improvements, encompassed only improvements which were patentable. Defendant asserts that since the improvements here have been patented,[4] they come within Republic's exclusive license; that Republic is the only party who might have an interest in the profits Moskovitz has made from those improvements; and therefore, Frankel has no right to sue and cannot be the real party in interest.

 A proceeding for civil contempt is one instituted to preserve and enforce rights of a private party to an action and to compel obedience to a judgment or decree in favor of such party. Holt v. McLaughlin, 357 Mo. 844, 210 S.W.2d 1006 (1948); Middleton v. Tozer, 259 S.W.2d 80 (Mo.App.1953). Civil Contempt is a sanction to enforce compliance with a court order or to compensate for any losses sustained by reason of non-compliance. McComb v. Jacksonville Paper Co., 336 U. S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). A civil contempt proceeding may only be instituted by a party who has a right under a court order that has been violated and who is seeking to have that right protected or enforced. Middleton v. Tozer, *supra*. And since it is a proceeding to protect the rights of a party to an action, the real party in interest is the party litigant whose rights are claimed to have been violated. Jafarian-Kerman v. Jafarian-Kerman, 424 S.W.2d 333 (Mo.App.1967).

 Plaintiff and defendant were parties to a consent decree and plaintiff instituted this proceeding to compel defendant's compliance with that decree. Obviously, plaintiff is the real party in interest in this contempt proceeding.

Defendant asserts that he has been put in the position of owing 50% of the profits derived from the improvements to plaintiff and 100% of those same profits to Republic under the license agreement. Clearly this is not the case. The court adopted the referee's report finding that defendant's profits from the improvements was $51,816 and awarded $25,908 to plaintiff. Obviously, if Republic were to recover from Moskovitz in another action based on these improvements and if Republic was awarded an amount equal to Moskovitz's profits, this hypothetical award would be for $25,908 since what was paid to Frankel could not constitute profits of Moskovitz.

Defendant's contention that plaintiff is not the real party in interest is, therefore, rejected and the rights of Republic against either Frankel or Moskovitz need not be determined at this time.

As we stated earlier, the remainder of defendant's contentions concern the amount of plaintiff's award. The referee's report filed after the accounting found:

1. There is insufficient evidence upon which to determine whether any profit was made by defendant within the bounds of the court decree beyond the time that Micro-Precision ceased manufacturing the ball joints in question. The report deals, therefore, only with the fiscal years ending May 31, 1961 and May 31, 1962.

2. Since no breakdown of costs or inventory for ball joints and other products for the years in question is reflected in the annual accounting of Micro-Precision, the allocation of profit to ball joints is based on the gross sales of ball joints relative to the total sales for the same period. This results in the determination that 52.914% of the total profits for the two-year period ending May 31, 1962 is attributable to the

---

4. Developments exemplified by Exhibits G and J are the subject of Patents 3,337,246 and 3,337,247.

sale of the ball joint suspensions encompassed by the decree.

3. Over this period the actual expenses (real depreciation) for the dies and patterns used in the manufacture of these ball joints was $2,864. The Company deducted $24,886 as expense for dies and patterns. The difference ($22,022) must be disallowed as a deduction in this determination.

4. The Company deducted $32,882 representing legal fees primarily in connection with the *Republic* case, *supra*. The propriety of this deduction should be determined by the court, and the deduction is disallowed pending such determination.

5. Net profit for this two-year period was $18,021 before taxes as per the Company's statement. (Although $5,400 in income taxes is reflected, no deduction is made for income taxes since the amount defendant would pay plaintiff under this court decree would, for tax purposes, be taxable to plaintiff and deductible by defendant. In addition, Micro-Precision had losses in subsequent years which could be carried back to eliminate any income tax.)

6. Adding the disallowed deductions, the profit of Micro-Precision for the two-year period is $72,925.

7. During this period, defendant drew a salary of $25,000 which was reflected as an expense by the Company. In determining the amount of profit realized by defendant from the sale of ball joints, 52.914% of that salary should be included.

8. Adding the $25,000 to the profits before taking the percentage results in a total of $97,925. The amount attributable to ball joints is $51,816. (Note that the same result is reached if the percentage is taken first and 52.914% of the salary added to it).

9. Plaintiff is entitled to $25,908 being one-half (½) of the profits.

After determining that no part of the litigation expenses in the *Republic* case should be charged to plaintiff since plaintiff and defendant were adverse parties in that action, the court adopted the referee's report. The court entered judgment in favor of plaintiff for $25,908 together with 6% interest thereon from May 31, 1962 and for costs of this litigation including plaintiff's attorney's fees of $4,000 and $7,000.

Defendant contends that it was error to disallow the deductions for legal expenses incurred in *Republic,* the amount of income taxes paid and the 52.914% of defendant's salary. We believe all of these deductions were properly disallowed. There is no indication in the stipulation between the parties or in the consent decree entered pursuant to that stipulation or in the voluminous transcript in this case that either defendant or plaintiff contemplated remuneration from their interests in the ball joints other than the profits realized from sales. We have found no justification for permitting that portion of the salary defendant drew from his wholly owned company which is attributable to the ball joints to be used as an expense to that company when that would go beyond the contemplation of the parties that they share equally and go beyond the court decree to the same effect. For this reason, the 52.914% of defendant's salary constitutes profits to defendant from the sale of ball joints and was properly treated by the referee. The income tax paid was properly disallowed for the reasons stated by the referee. We also agree that the litigation expenses incurred by defendant in the *Republic* case should not be taxed against plaintiff in that he was an adverse party in that action.

Defendant's contention that plaintiff is limited to a $2,000 recovery in this case based on the stipulation filed in *Republic* is erroneous. Plaintiff was not a party to that stipulation and is not bound by it.

Finally, defendant contends that it was error to award attorney's fees

and expenses to plaintiff. This is a contempt proceeding, and the law is quite clear in permitting the recovery of reasonable attorney's fees incurred in the prosecution of contempt proceedings. Harrington, Inc. v. Frick, 446 S.W.2d 845 (Mo. App.1969). Defendant did not question the reasonableness of these fees and we believe them to be reasonable. The attorney's fees and expenses were, therefore properly assessed against defendant.

The judgment is affirmed.

WEIER and SIMEONE, JJ., concur.