**David REED, Respondent,**

**Neysa L. Day, Appellant,**

v.

**Janice REED, Respondent.**

**No. WD 56601.**

Missouri Court of Appeals,
Western District.

Nov. 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 2000.

David Lee Wells, Kansas City, for respondent Janice Reed.

David Reed, acting pro se.

Before HAROLD L. LOWENSTEIN, Presiding Judge, Judge ALBERT A. RIEDERER and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Appellant Neysa L. Day appeals the lower court's order in an action for contempt and petition for interpleader brought by Respondent Janice Reed. The court granted priority to Ms. Reed's claim of set-off over Ms. Day's attorney's lien that arose out of the prior dissolution action between Mr. and Ms. Reed. Because the contempt action and the dissolution action arose out of the same or similar subject matter, we find that the claim of set-off has priority over Ms. Day's lien, and affirm that part of the lower court's decision. We also find, however, that the trial court abused its discretion in awarding Ms. Reed attorney's fees incurred in defending against Mr. Reed's contempt action and in filing an interpleader action, and remand for recalculation of those fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Seeking to dissolve his marriage with Ms. Janice Reed, and after discharging his original counsel, Mr. Reed engaged Ms. Day as counsel. As part of their engagement agreement, Mr. Reed agreed to pay Ms. Day $140.00 per hour in addition to reimbursement for all expenses.

On January 27, 1998, a visiting judge dissolved the marriage and divided the marital property. In order to equalize the division of the marital property, the lower court ordered the following in relevant part:

The judgment ordered that Ms. Reed "proceed to endorse, sign, execute and complete all necessary documents and applications to receive" the educational reimbursement check due to her from the City of Kansas City, in the amount of $9,937.50, within 7 days of receiving her grades for each respective semester. According to the order, within 5 days of the receipt of each reimbursement check, Ms. Reed was required to negotiate it to Mr. Reed.

The court ordered Ms. Reed to execute a promissory note in favor of Mr. Reed for $6,022.00, bearing interest at the rate of 8% per annum, to be paid in four installments of $1,625.94 beginning on February 1, 1998, and thereafter on May 1, August 1, and December 1, 1998.

The court awarded the marital residence to Mr. Reed. As part of this award, on February 1, 1998, Ms. Reed was required to surrender possession of the residence to Mr. Reed and, at that same time, Mr. Reed would become responsible for all encumbrances on the property. Primarily, the court referred to two mortgages on the property, the monthly payments of which Mr. Reed was now required to pay. The two mortgagees were Chase Manhattan and Amerus Bank who were owed monthly payments of $856.58 and $243.42, respectively, totaling $1,100.00 per month. If Mr. Reed failed to make timely payments on these notes, the court ordered that any payments then made by Ms. Reed would result in a judgment in her favor. Finally, the court ordered Mr. Reed to take appropriate steps to remove Ms. Reed's name as obligor on the mortgages securing the loans that encumbered the marital residence.

Otherwise, the residence would be sold.

The trial court awarded Ms. Reed certain personal property amounting to $1,445.00.

Mr. Reed failed to make the mortgage payments to either Chase Manhattan or Amerus Bank on February 1 or March 1, 1998, as required by the dissolution decree. Ms. Reed undertook to make those payments. Mr. Reed argued that he would have made these payments had Ms. Reed met her obligations under the judgment of dissolution, but that he had no money to do so because she had failed to either make the required payments on the promissory note or to pay over the tuition reimbursement.

On March 4, 1998, in an attempt to compel Ms. Reed to pay over these monies, Mr. Reed filed a motion to show cause why Ms. Reed should not be held in contempt for failing to adhere to the judgment. He claimed, *inter alia*, that Ms. Reed failed to pay any of her tuition reimbursement over to him even though it had been nearly six weeks since she had received her grades.[1] In addition, he argued that Ms. Reed had not only failed to execute a promissory note in the amount of $6,022.00 but, more importantly, had failed to make the first payment required thereunder.[2] Mr. Reed asserted that, had Ms. Reed complied with these orders, he would have made the mortgage payments that he was otherwise unable to make with his salary.

Until Mr. Reed sold the marital residence on June 11, 1998, he made no mortgage payments and Ms. Reed continued to make the payments on both mortgages on April 1, May 1, and June 1, 1998, totaling $4,590.50. On July 31, 1998, Ms. Reed filed a counter-motion for contempt and a petition to interplead a check in the amount of $6,210.94, which was the balance of the educational reimbursement due Mr. Reed under the original decree of dissolution. Ms. Reed urged the court to hold Mr. Reed in contempt for his failure to make the mortgage payments on the marital residence and for his failure to return to Ms. Reed personal property in violation of the original dissolution decree. She noted that, out of the first check from the educational reimbursement, which she had endorsed over to him in early March 1998, Mr. Reed chose to pay part of his attorney's fees instead of making the mortgage payment required under the judgment. Ms. Reed requested the court to award to her the value of the personal property not recovered from Mr. Reed ($1,445.00), the mortgage payments she made that were to have been made by Mr. Reed ($4,590.50), and the attorney's fees she incurred in prosecuting her motion for contempt and interpleader and in defending against his motion for contempt ($4,237.50). She also requested that if the court were to award her such a judgment, she be allowed to set it off against the amounts she otherwise owed Mr. Reed under the dissolution decree.[3]

1. Despite receiving her 1997 Fall semester grades on January 21, 1998, the City of Kansas City, of which Ms. Reed is the chief financial officer, did not issue a reimbursement check to her until March 5, 1998, in the amount of $3,726.56, almost six weeks later. She turned these funds over to Mr. Reed. Upon receipt of these funds, Mr. Reed agreed to make a payment of $3,000.00 to his attorney, Ms. Day, on accrued fees and retained the balance of $726.56. He did not use the funds to make any mortgage payments.

2. At the time of the filing of this motion, one payment on the promissory note, in the amount of $1,625.94, was due on February 1, 1998.

3. The amount still due to Mr. Reed under the original dissolution judgment was $12,714.70 (the sum of: $6,503.76 being the amount of the promissory note plus interest, upon which Ms. Reed had failed to make any payments, and $6,210.94, being the remainder of the educational reimbursement due to Mr. Reed). Ms. Reed's requested judgment would amount to $10,273.00: $4,590.50 in mortgage payments, $1,445.00 in personal property not returned to Ms. Reed, and $4,237.50 in attorney's fees. As a result of the court granting this motion, of the $6,210.94 check made the

Prior to the date set for hearing of the cross-motions for contempt, and the interpleader of the reimbursement check, Ms. Day withdrew as attorney for Mr. Reed. Nonetheless, Ms. Day appeared at the hearing, representing her own interest in her attorney's fees. Ms. Reed and her attorney, Mr. Wells, appeared and Ms. Reed testified. Mr. Reed did not appear. Judge Atwell, a different judge than had heard the dissolution itself, heard the case. He expressed consternation at Mr. Reed's failure to appear and held that, in the absence of evidence from him, his motion for contempt would be denied. The court granted Ms. Reed's cross-motion for contempt and interpleader, ordering from the bench that the interpleaded check in the amount of $6,210.94, made payable to Ms. Reed, be returned to the maker, the City of Kansas City, to be reissued, made payable to the trust account of Ms. Reed's attorney, David Lee Wells, and deposited therein. Finally, on November 9, 1998, after allowing both parties to brief the issue of the priority between Ms. Day's attorney's lien for the fees incurred by Mr. Reed prior to the judgment of dissolution and Ms. Reed's right to set-off, the court granted Ms. Reed's motion and gave priority to the set-off of the property and mortgage payments and of Ms. Reed's attorney's fees in prosecuting and defending the contempt and interpleader actions. It is from this decision that Ms. Day appeals.

## II. ATTORNEY'S LIEN VERSUS SET-OFF

### A. Recognition and Function of Attorney's Liens Generally.

■ In this case, it is conceded that Ms. Day did have a valid attorney's lien that attached to the dissolution judgment under Section 484.130 RSMo 1994, which states:

> The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is

not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after the judgment.

Sec. 484.130. The fact that Ms. Day was replacement counsel is irrelevant since she entered her appearance and did the work which led to the judgment in favor of her client, Mr. Reed. *Id.; Bishop v. United Rys. Co. of St. Louis,* 165 Mo.App. 226, 147 S.W. 170, 172 (1912).

Ms. Day notes that her lien on the judgment in the dissolution action attached prior to the judgment in the contempt action which is sought to be offset against it, for, by statute, an attorney's lien attaches "[f]rom the commencement of an action." Sec. 484.130 RSMo 1994. *See also Kansas City Area Trans. Auth.. v. 4550 Main Associates,* 893 S.W.2d 861, 869 (Mo.App. W.D.1995) (hereinafter "*KCATA*"); *Downs v. Hodge,* 413 S.W.2d 519, 523 (Mo. App.1967). She argues that, as her lien attached first, it should have priority over the subsequent judgment.

■ In order to resolve this issue, we must consider the function of an attorney's lien and balance it against the right of set-off. The function of an attorney's lien, whether it arises under the common law or under a statute, is to assure payment of the attorney's fees and expenses from the fund created by the attorney's efforts. *KCATA,* 893 S.W.2d at 867. *See also* Jay M. Zitter, JD, Annotation, *Priority Between Attorney's Charging Lien Against Judgment and Opposing Party's Right of Setoff Against Same Judgment,* 27

subject of the interpleader action, $2,441.70 would be payable to Mr. Reed ($12,714.70 minus $10,273.00), subject to Ms. Day's attor-

ney's lien, and the remainder, $3,769.24 ($6,210.94 minus $2,441.70) would be payable to Ms. Reed.

ALR5th 764, 777 (1995); 7A C.J.S. Attorney and Client Sect. 359 (1980). It is the policy of our courts to enforce these liens in order to give meaning to the "obvious purpose of the statute, i.e., to provide protection in fact for the attorney who has rendered services to a client." *Satterfield v. Southern Ry. Co.,* 287 S.W.2d 395, 397–98 (Mo.App.1956). The lien also ensures "that a client, who otherwise may not have funds to pay for legal representation, will get the assistance of an attorney." 27 ALR5th at 777, *citing,* 7 Am Jur 2d, Attorneys at Law Sec. 332. Protecting the fund from which an attorney will be compensated is thus said to broaden the accessibility of legal services. For these reasons, attorney's liens are considered to be "remedial in nature [and] will be liberally construed." *Downs,* 413 S.W.2d at 523.

Nonetheless, in determining priorities, the policies behind granting an attorney a lien on a fund the attorney helped to create must be balanced against the fact that this same fund may be subject to competing claims, most commonly claims of set-off by the party who was ordered to pay something to the client. If the amount of the attorney's lien and the set-off are greater than the amount of the fund in question, then the issue arises whether the attorney's lien should be given priority over the claim of set-off, or visa versa.

### B. Priority of Lien or Set-Off.

Courts have adopted a number of different approaches in considering whether to give priority to an attorney's lien for services rendered the client in securing a judgment, or to instead give priority to the opposing party's right to set off moneys owed by the client to the opposing party. Many courts give the lien priority as a general rule, 27 ALR5th at 779–81 (citing cases from FL, GA, IL, IN, KY, ME, MA, MI, MN, MS, NE, NH, NJ, NY, TE, TX, UT, and WV), while other courts give priority to the set-off in the usual case. *Id.*

at 781–3 (citing cases from AR, CA, CT, GA, MD, MO, NE, ND, PA, and TX). Yet other courts grant priority to the party who is the first to assert either the lien or the right to set-off. *Id.* at 783–4 (citing cases from AL, CA, CO, DC, FL, IA, KS, MN, NJ, ND, OH, OR, PA, SD, and TX). A few courts have simply left it to the discretion of the trial court to consider a number of factors and subjectively decide which claim to give priority. *Id.* at 785 (citing cases from NM and SC).

A number of decisions follow an intermediate approach, in which the decision as to who has priority depends on whether the judgment upon which the attorney's lien has attached (Judgment A), and the judgment the opposing party seeks to set off against Judgment A (Judgment B), derive from similar or different causes of action. *Id.* at 786–90. These cases hold that, if the judgments are "rendered in the same, similar, or closely related action," then the right to set-off will take priority over the attorney's lien. In other words, if Client A wins a judgment against B, but A already owed B money for a related matter, or B won a counterclaim against A on a related matter, then the claims of A and B will be offset, and the attorney's lien will attach only to the net amount following the set-off. 27 A.L.R.5th at 786 (cases also cited from IA, MN, MO, MT, NE, NV, NY, SD, and WI).[4]

Missouri takes this approach. The general rule in Missouri is that, if "the cause and the setoff are related to the same matter, the lien attached only to the surplus that may be adjudged the plaintiff after a balance is struck." *State ex rel. Hinde v. United States Fidelity & Guaranty Co.,* 135 Mo.App. 160, 115 S.W. 1081, 1082 (1909). Thus, *Hinde* found that two competing judgments, one for an attachment bond and one in damages for the wrongful levy of the bond, should be offset

4. This rule is not universal. A few courts have held that even if the judgments are rendered in the same action concerning related claims, the attorney's lien still is given priority. 27 A.L.R.5th at 787–88 (citing cases from NY, KY, and ME).

against each other in that case before the attorney's lien was applied, as both were held to be actions ex contractu.[5]

This rule is easy to apply when the competing claims arise in the same hearing on the same contract. For example, if A sues B on a contract for $100,000, and B cross-claims against A for failure to deliver other items under the contract with a value of $25,000, and each wins judgment on their claim and cross-claim, the amounts awarded will be offset against each other, and the attorney's lien will attach only to the net $75,000 amount which B owes A after the amount of the judgment on his cross-claim is deducted.

■ If, however, the "right to set off [is of] a demand wholly unrelated to the matter out of which sprung [the attorney's lien]," then the attorney's lien takes priority. *Id.* Thus, for instance, *Kansas City Rapid Motor & Transp. Co. v. Young,* 188 Mo.App. 289, 175 S.W. 95, 98 (1915), held that the attorney's lien took priority over the claim of set-off where the second judgment was based on tort and the first on contract, as those are unrelated causes of action. In so holding, *Hinde* cited with approval the following:

> Where different claims arise in the course of the same suit, or in relation to the same matter, it is undoubtedly equitable and just that these equities should be arranged between the parties without reference to the solicitor or attorney's lien. His lien is only on the clear balance due to his client after all the equities are settled. But where other claims, arising out of different transactions, and which could not have been legal or equitable set-off in that suit, exist between the parties, the court ought not to divest the lien of the attorney or solicitor, which has already attached on the amount recovered, for the cost of that particular litigation. When the solicitor has been at the labor and expense of prosecuting a suit, it is equi-

table and just that his costs should be paid out of that litigation.

*Hinde,* 115 S.W. at 1084, *quoting, Roberts v. Mitchell,* 94 Tenn. 277, 29 S.W. 5, 29 L.R.A. 705 (1895).

Subsequent cases applying Missouri law have followed this rule. Thus, in *Benton v. Alcazar Hotel Co.,* 354 Mo. 1222, 194 S.W.2d 20, 25 (Mo.1946), our Supreme Court held that because Alcazar's compensatory lien (for the damages resulting from Benton's delay in surrendering possession of a hotel Alcazar purchased) and Benton's claim for unpaid installments (due under the contract for purchase of the same hotel) arose out of the same transaction, the two claims should be set off against each other before allowing the attorney's lien to attach. Similarly, in *Hillside Enterprises, Inc. v. Continental Carlisle,* 147 F.3d 732, 735 n. 4 (8th Cir.1998), the Eighth Circuit recognized that, under Missouri law, an attorney's lien "is 'subsequent and subservient' to the right of an opponent to set off its award where the claims 'arose in the course of [the] very action and inhered in and arose out of the same transaction.'" *Hillside,* 147 F.3d at 735.

*C. Contempt and Dissolution Actions Were Sufficiently Related that Judgments Would be Offset And Attorney's Lien Would Attach To Net Amount.*

Application of these principles here requires us to reject Ms. Day's argument that the determination of priorities in this case can be resolved merely by determining that her attorney's lien arose first since it attached when she began representing Mr. Reed in the dissolution action, long before the contempt motion was ever filed. Rather, the right to priority depends on whether the original dissolution judgment and the subsequent action by Ms. Reed to enforce that prior judgment through contempt are sufficiently similar, arising out of the same subject matter, that rights based on both will be treated as

---

**5.** The court noted that the action for damages on the attachment bond was *ex contractu* even though the commission of a tort was required to breach a contract.

if they arose in the same matter. If not, and the actions are considered separate ones, then Ms. Day's attorney's lien will have priority, for it attached to the dissolution judgment before the contempt was filed. That is what Ms. Day says should occur here.

On the other hand, if the two judgments are sufficiently related to one another as to be seen as arising out of the same subject matter, the courts will set off the amounts owing by the parties to each other and then apply the attorney's lien to the net amount of the fund remaining after the competing judgments are offset. That is what Ms. Reed and her attorney say should be done here and, they argue, this means that Ms. Reed's money judgment against Mr. Reed for the value of the five mortgage payments she made and the personal property he failed to return, as well as the attorney's fees ordered for prosecution of the contempt action, should be offset against the amount Ms. Reed owed Mr. Reed under the dissolution decree, and that Ms. Day's attorney's lien should attach only to the net amount remaining after all of these offsets. *See* note 3, *supra.*

■ We agree with Ms. Reed's argument insofar as she asserts that the dissolution action and the contempt action she brought to obtain what she was entitled to under the dissolution decree are sufficiently related that the dissolution judgment for Mr. Reed should be offset against Ms. Reed's payments on the mortgage and the value of her unreturned personal property. In so holding, we rely on the Missouri Supreme Court's decision in *Odom v. Langston,* 358 Mo. 241, 213 S.W.2d 948 (Mo. banc 1948), that:

> It has been held that a proceeding for contempt to enforce a remedy in a civil action *is a proceeding in that action,* especially a contempt proceeding in a court of equity in aid of the court's original jurisdiction and in the enforcement of its decree; but it has been held that *while the proceeding is auxiliary*

*to the main case in that it proceeds out of the original case,* it is essentially a new and independent proceeding *in that* it involves new issues and must be initiated by the issuance and service of new process.

*Odom,* 213 S.W.2d at 951 (emphasis added). *Accord, Frankel v. Moskovitz,* 503 S.W.2d 428, 434 n. 2 (Mo.App.1973) (plaintiff's contempt action to compel the defendant's compliance to a consent decree directing him to assign to plaintiff a 50% interest in certain patent and patent applications is ancillary to decree). Thus, a contempt proceeding addressing new issues and requiring that the parties are re-noticed, nevertheless, arises out of and is ancillary to the original case.

In determining whether to grant or deny a motion for civil contempt for failure to comply with a previous court order, a court must examine that previous order in conjunction with the actions or omissions that arose out of the order to see if the latter violated the former. In these circumstances, the court is not seeking to make a new judgment, but merely seeking to enforce the previous judgment. Moreover, the relief granted in the subsequent contempt proceeding logically depends upon the extent to which the court's previous decree was breached and the damage caused thereby.

The interrelationship of these two matters is particularly evident here, where Ms. Reed's major complaint was that Mr. Reed failed to make the mortgage payment on the marital residence and failed to return personal property belonging to her. The original dissolution decree indicates that the judge was aware this might occur, for he provided in the decree that, if Mr. Reed failed to timely make payments on the mortgages "any sums paid by [Ms. Reed] . . . on said debts shall be a judgment against [Mr. Reed]." By filing her motion requesting the court find Mr. Reed in contempt of court for failing to follow the dissolution decree, Ms. Reed simply did what the prior decree ordered and

sought to finalize that promised judgment for the mortgage payments she had been forced to make by reason of Mr. Reed's inaction.

For these reasons, we conclude that, in granting Ms. Reed a judgment for the value of her personal property and for the amount of the mortgage payments, and in offsetting these against the dissolution decree payments previously ordered, the trial court did not make a "new" judgment in a separate matter. Rather, the relief granted by the court in favor of Ms. Reed, excluding the award of attorney's fees, was interrelated with and intended to effectuate his prior decree. As even Ms. Day admits in her Reply brief, both the dissolution decree and the contempt motion "arose out of the court's division of marital assets and equalization of those assets." Following *Odom*, we find they are sufficiently related that the trial court did not err in granting priority to Ms. Reed's right of set-off over Ms. Day's attorney's lien where both actions arose out of the same transaction.

*D.   Priority of Lien Versus Attorney's Fees Award in Contempt Action.*

■ As already noted, in addition to setting off the amounts due Ms. Reed in reimbursement of her expenditures from the amounts she owed to Mr. Reed, the court ordered that Ms. Reed's attorney's fees in bringing the contempt action, purportedly totaling $4,237.50, also had priority over Ms. Day's attorney's lien arising out of the dissolution action.

Clearly, the award of Ms. Reed's attorney's fees was not based on a finding that her attorney had a lien which attached first. Indeed, since, after set-off, Ms. Reed still owed money to Mr. Reed, there was no resulting fund or corpus to which a lien for Ms. Reed's attorney could attach. Rather, the court awarded Ms. Reed her attorney's fees, and gave them priority

over Ms. Day's lien, by ordering that the fees be paid as costs in the contempt action.

■ Usually, it is improper to award attorney's fees as costs in Missouri, for we follow the "American Rule," under which each party bears the expense of his or her own attorney's fees. *David Ranken, Jr. Technical Inst. v. Boykins*, 816 S.W.2d 189, 193 (Mo. banc 1991); *McCreary v. McCreary*, 954 S.W.2d 433, 452 (Mo.App. W.D.1997); *St. Louis County v. Taylor-Morley, Inc.*, 923 S.W.2d 507, 511 (Mo. App. E.D.1996); *21 West, Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 881 (Mo.App. E.D.1995).

■ Nonetheless, there are exceptional situations in which Missouri will permit the award of attorney's fees as part of costs or damages. Two of these very limited exceptions apply where the right to attorney's fees is set by statute or provided for by contract. *McCreary*, 954 S.W.2d at 452. Clearly, neither of these exceptions applies here, for there is no applicable statute which entitled Ms. Reed to her attorney's fees in bringing her contempt and interpleader motions, or in defending the contempt action brought by Mr. Reed.[6] Neither was there a contract providing for such fees.

Other cases have also recognized the right to an award of attorney's fees resulting from collateral litigation. *Id. See also St. Louis County*, 923 S.W.2d at 511; *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 340 (Mo.App. S.D. 1991). *Brown* noted:

The appellate courts of this state have followed the rule that "[w]here ... the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees ... are proper items of damages." *Johnson v. Mer-*

---

**6.** As Mr. Reed notes, while a court is permitted to award attorney's fees in a dissolution action, the court denied Ms. Reed fees in its dissolution decree, and in its judgment in the contempt action it did not find that circumstances had changed or that she was entitled to her attorney's fees under the rules applicable to dissolution actions.

*cantile Trust Co.*, 510 S.W.2d 33, 40 (Mo.1974); *Myers v. Adler*, 188 Mo.App. 607, 616, 176 S.W. 538, 541 (1915). However, for a party to recover attorney fees under the collateral litigation exception to the "American Rule," that party must have incurred the fees as a result of suing, or being sued by, *an outside third party. Ohlendorf v. Feinstein*, 697 S.W.2d 553, 556 (Mo.App.1985); *Mo. Damages*, Section 19.15 (Mo.Bar 1988). *Brown*, 820 S.W.2d at 340 (emphasis added). In *Brown*, the trial court awarded plaintiffs attorney's fees in addition to actual damages arising from the defendant's wrongful acts. This Court reversed that award because there was no evidence that any of the attorney's fees awarded to the plaintiff were incurred "as a result of suing, or being sued by, an outside third party." *Id.* All the fees were incurred in litigation between the plaintiff and the defendant.

Similarly, here, Ms. Reed offered no evidence, nor was any evidence otherwise introduced to support a finding that the attorney's fees awarded to Ms. Reed below were generated from litigation with someone other than Mr. Reed. On the contrary, the attorney's fees awarded to Ms. Reed were precisely those fees incurred in her litigation with Mr. Reed, not with an outside third party. Accordingly, the collateral litigation exception to the American Rule does not apply to the award of attorney's fees in this case.

A fourth exception occasionally applies permitting reimbursement when a court of equity, in very unusual circumstances, finds an award of fees necessary in order to balance benefits. Such "very unusual circumstances" have been found only in a limited number of fact situations; primarily, where a beneficiary, through litigation, benefits the entire estate, or when the "litigant has successfully created, increased or preserved a fund in which nonlitigants were entitled to share." *DCW Enterprises*, 953 S.W.2d at 132; *Feinberg v. Adolf K. Feinberg Hotel Trust*, 922 S.W.2d 21, 26 (Mo.App. E.D.1996). In at least one case, a court has awarded such fees in equity when they were caused by a specific defendant's intentional misconduct. *Temple Stephens Co. v. Westenhaver*, 776 S.W.2d 438, 443 (Mo.App. W.D.1989).

Other courts have held that "the law is quite clear in permitting the recovery of reasonable attorney's fees incurred in the prosecution of contempt proceedings." *Frankel*, 503 S.W.2d at 434. *See also R.E. Harrington v. Frick*, 446 S.W.2d 845, 849 (Mo.App.1969); *In re Estate of Zimmerman*, 820 S.W.2d 617 (Mo.App. E.D.1991); *Maxwell v. Maxwell*, 775 S.W.2d 576 (Mo. App. S.D.1989). But, it is not clear whether this is a separate exception or whether it is considered another specific application of the equitable exception just mentioned. *See In re Marriage of Morriss*, 573 S.W.2d 101, 102 (Mo.App.1978); *Frick*, 446 S.W.2d at 849 (ruling that while a trial court can assess these fees, the fees are not available on appeal); *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (recognizing that one of the exceptions to the American Rule allowing such fees is the "willful disobedience of a court order"); A.S. Klein, Annotation, *Allowance of Attorneys' Fees in Civil Contempt Proceedings*, 43 A.L.R.3d 793 (1972). "The theory for allowing attorneys' fees for civil contempt is that civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Marriage of Morriss*, 573 S.W.2d at 102, *quoting, Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 272 (5th Cir.1977).

It is clear that the contempt exception, rather than the court's general authority to award attorney's fees in dissolution actions, was the basis on which the trial court relied in granting Ms. Reed $4,237.50 in attorney's fees as costs, to be paid prior to the attachment of Ms. Day's lien. The cases cited by the parties deal only with offsetting judgments in related suits, not

with whether costs should be offset against an opposing judgment before determining the net amount of the judgment to which the attorney's lien will attach. The principles just discussed support deducting such costs before reaching the net judgment amount to which the lien will attach, however, as these principles teach us that the attorney's lien is intended to allow the attorney recovery from the fund which the attorney's work created for the client. The client is only entitled to the amount in the fund after the deduction of costs. Therefore, it follows that the amount of the attorney's fees awarded as costs for the prosecution of the contempt action are properly offset against Mr. Reed's dissolution judgment before arriving at the net amount of the judgment to which Ms. Day's attorney's lien should attach.

This does not mean we will entirely affirm the judgment, however, for, as noted earlier, the amount of the fees which the court awarded included the fees incurred both in prosecuting the contempt action, and in filing the interpleader and defending Mr. Reed's competing contempt motion. Specifically, the record shows that, on March 4, 1998, Mr. Reed, through his attorney, filed a motion for order to show cause why Ms. Reed should not be held in contempt for failure to comply with the Dissolution Decree. Pursuant to this motion, the court, on May 20, 1998, ordered Ms. Reed to appear on June 11, 1998. The record indicates that all parties appeared in court on June 11 to allow Ms. Reed to show cause or defend against the contempt allegation.[7] It was not until July 31, 1998, that Ms. Reed filed her own motion requesting an order for Mr. Reed to show cause why he should not be held in civil contempt for failure to adhere to the Dissolution Decree and a petition for interpleader, thus, beginning Ms. Reed's prosecution of a claim for civil contempt in which she was ultimately successful.

The parties have not cited to the Court, either in their briefs or in oral argument, any authority to support the notion that the fact that Ms. Reed filed her motions for contempt and interpleader in the same action as Mr. Reed filed his motion for contempt somehow gives her a right to recover her fees in defending the contempt action or in filing the interpleader. In the absence of such authority, the normal rule would seem to apply that each party must bear its own fees. *See* **cases cited** *supra.* Thus, to the extent that Ms. Reed's attorney's fees were not due to prosecuting the contempt motion, it was error to award them as costs and to offset them from Mr. Reed's judgment before applying Ms. Day's attorney's lien. Ms. Reed's attorney's invoice reveals that a substantial part of the fee awarded as costs was not incurred in prosecuting the contempt action, but rather in defending Mr. Reed's contempt action and to some extent in filing the interpleader, but the determination of the exact amount of the fee that falls in each category must be left to the trial court to determine.

Accordingly, we affirm so much of the judgment as granted priority to the set-off for the amounts the court found Mr. Reed owed Ms. Reed, and for that part of Ms. Reed's attorney's fees as was attributable to prosecution of the contempt action, but we reverse that portion of the judgment that granted Ms. Reed as costs, entitled to priority, her attorney's fees incurred in defending Mr. Reed's contempt action and in filing her interpleader, and remand for further proceedings in accordance with this opinion.

Judge HAROLD L. LOWENSTEIN, Presiding, and Judge ALBERT A. RIEDERER, concur.

7. . The issues were continued to a hearing scheduled for August 17, 1998. Both motions for contempt and the interpleader were determined at that hearing.