**DRAKE DEVELOPMENT
& CONSTRUCTION
LLC, Plaintiff,**

v.

**JACOB HOLDINGS, INC.,
Defendant–Appellant,**

v.

**Gregory David Williams, Movant–
Respondent.**

No. SD 31263.

Missouri Court of Appeals,
Southern District,
Division Two.

March 26, 2012.

Clayton G. Kuhn, St. Louis, MO, for Appellant.

Gregory D. Williams, Sunrise Beach, MO, for Respondent.

JEFFREY W. BATES, Judge.

Jacob Holdings, Inc. (Jacob) appeals from a judgment assessing an attorney's lien in favor of attorney Gregory Williams (Williams). Presenting two points of error, Jacob contends: (1) the trial court lacked jurisdiction to hear Williams' motion to assess his attorney's lien because the motion was filed after the judgment in the underlying case became final; and (2) alternatively, the court erred in determining the amount of the lien because it included costs and fees unrelated to Williams' work in the underlying case. Finding no merit in either contention, we affirm.

## I. Factual and Procedural Background

This case has previously been before this Court. *See Drake Development & Construction, LLC v. Jacob Holdings, Inc.*, 306 S.W.3d 171 (Mo.App.2010). The underlying lawsuit was brought by Drake Development & Construction, LLC (Drake) against Jacob to quiet title to real estate, previously owned by Jacob, that was purchased by Drake at a tax sale. In the quiet title action, Drake contended that the redemption notice it sent to Jacob complied with all of the requirements of § 140.405, and Jacob failed to redeem within the statutory period. *Id.* at 172–73.[1] Williams represented Jacob in that lawsuit and filed an answer and a counterclaim, seeking to quiet title to the real estate in Jacob, on its behalf. The trial court found in favor of Drake. Williams represented Jacob in its appeal to this Court. We held that Drake lost all interest in the real estate because the redemption notice was defective. *Id.* at 174. The judgment was reversed, and the cause was remanded for further proceedings consistent with our opinion. *Id.*

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2011).

After mandate issued, the trial court entered a second amended judgment on April 14, 2010. This judgment determined that: (1) Jacob was the fee simple owner of the real estate at issue; (2) Jacob was required to reimburse Drake for the amount of real estate taxes it paid to the Collector of Revenue; (3) the Collector was required to reimburse Drake for the surplus amount generated by the tax sale; and (4) Drake was required to pay court costs. No post-trial motions were filed, and no party appealed. Thereafter, Drake filed a satisfaction of judgment.

On December 27, 2010, Williams filed a motion asking the trial court to assess the amount of attorney's fees Williams was owed by Jacob and impose the same as a lien on the real estate awarded to Jacob by the judgment. Jacob filed a response challenging the court's jurisdiction to hear the motion and alleging that Williams had been paid in full by Jacob. The court entered an order that overruled the motion to dismiss for lack of jurisdiction and set the matter for an evidentiary hearing. After conducting that evidentiary hearing, the trial court entered a "Judgment Assessing Attorney's Lien Against Defendant Jacob Holdings, Inc." on March 29, 2011. This judgment: (1) assessed Williams' attorney's fees at $35,546.08; (2) imposed the same as a lien against the real estate awarded to Jacob; and (3) authorized execution to issue. This appeal by Jacob followed. Additional facts will be disclosed as necessary to address Jacob's two points on appeal.

*Point I*

■ In Jacob's first point, it contends the trial court lacked the jurisdiction to hear Williams' motion for assessment of his attorney's lien because the motion was filed more than seven months after the April 2010 judgment in the underlying case became final. For the reasons that follow, we find no merit in Jacob's contention.

■ Williams' motion to assess his attorney's lien was brought pursuant to § 484.130, which states:

The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or *the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor,* and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

*Id.* (emphasis added). Based upon the express language of this statute, Williams had an attorney's lien that attached to Jacob's cause of action to recover its real estate as soon as Williams served Jacob's counterclaim upon Drake. *See id.; Reed v. Reed,* 10 S.W.3d 173, 177 (Mo.App.1999); *Downs v. Hodge,* 413 S.W.2d 519, 524 (Mo. App.1967). Jacob's quiet title cause of action was extinguished and merged into the judgment decreeing that Jacob was the fee simple owner of that real estate. *See Noell v. Missouri Pac. R Co.,* 335 Mo. 687, 74 S.W.2d 7, 11 (1934). Williams' lien attached to the judgment in Jacob's favor. *See id.* The real estate recovered for Jacob through Williams' efforts constituted the res upon which he had a lien for his fees. *See Young v. Levine,* 326 Mo. 593, 31 S.W.2d 978, 979–80 (1930) (holding that an attorney's lien created pursuant to statute, now § 484.130, attaches to a judgment awarding real property to the client); *Noell,* 74 S.W.2d at 11 (noting that property awarded to the client is the res upon

which an attorney has a lien to secure the payment of his fee); *Schempp v. Davis,* 201 Mo.App. 430, 211 S.W. 728, 730 (1919) (the attorney's lien not only attaches to the client's cause of action, but also to the fruits of that successfully enforced cause of action). Thus, § 484.130 essentially establishes a charging lien against the res that gives the attorney an equitable right to have attorney's fees and costs secured by the judgment in the lawsuit in which the fee was earned and the costs were advanced. *Wright v. Bartimus Frickleton Robertson & Gorny PC,* 364 S.W.3d. 558 (Mo.App. W.D.2011).

The question then becomes, how does the attorney enforce this charging lien? The statute creating this attorney's lien contains no specific method of enforcement. *See* § 484.130; *Satterfield v. Southern Ry. Co.,* 287 S.W.2d 395, 397 (Mo.App. 1956). The absence of a statutory remedy, however, does not mean that the attorney's lien must perish. *Id.* Missouri courts have been assiduous in devising modes of procedure for enforcing an attorney's lien that are compatible with the general rules established in our system of jurisprudence for securing private rights. *Anderson v. Anderson,* 404 S.W.2d 206, 210 (Mo.App. 1966). Unquestionably, the attorney has the right to follow the proceeds of the lawsuit into the hands of the party who received them. *Smoot v. Shy,* 159 Mo. App. 126, 139 S.W. 239, 241 (1911). Here, Williams' efforts resulted in a judgment awarding real estate to Jacob. Therefore, Williams had the right to follow those proceeds into Jacob's hands. *See id.* He could do so either by filing an independent action against Jacob or by filing a motion in the original case. *See State ex rel. Kinder v. Dandurand,* 261 S.W.3d 667, 671 (Mo.App.2008). "The remedy for enforcing the lien is not only left to the court, but in the final analysis it is up to the court to determine whether the method selected by the attorney is appropriate under all the facts and circumstances." *Satterfield,* 287 S.W.2d at 397; *see Plaza Shoe Store, Inc. v. Hermel, Inc.,* 636 S.W.2d 53, 56 (Mo. banc 1982) (quoting with approval that same principle from *Satterfield* ), *Reed v. Garner Industries, Inc.,* 832 S.W.2d 945, 949 (Mo.App.1992) (the remedy for enforcing an attorney's lien is left up to the trial court, which has wide latitude to determine the propriety of the method of enforcement selected). Thus, we believe the trial court's decision in the case at bar should be reviewed for abuse of discretion. *See Reed,* 832 S.W.2d at 949; *Plaza Shoe Store,* 636 S.W.2d at 56; *Satterfield,* 287 S.W.2d at 397.

Citing *Kinder,* Jacob argues that the trial court lacked jurisdiction to hear and determine the attorney's lien motion filed by Williams in the underlying case. We disagree because the procedural posture of *Kinder* renders that case factually inapposite. There, attorney Pearman filed a motion to determine her attorney's lien after trial, but before the judgment was entered. The court's judgment ordered the parties to pay their own attorney's fees, but did not dispose of attorney Pearman's pending lien motion. *Kinder,* 261 S.W.3d at 669. The *Kinder* court held that the judgment was not final because it did not dispose of all pending issues. Therefore, the trial court had jurisdiction to dispose of the lien claim, along with all of the other issues in the underlying case, by entering a timely amended judgment. *Id.* at 671.

The procedural posture of the case at bar is different. The record demonstrates that the judgment disposing of all claims in the underlying suit had become final before Williams filed his motion to assess his attorney's lien. The trial court made no attempt to resolve the lien claim via an untimely amendment of the underlying judgment. Williams and Jacob were the

only parties involved in the issues raised by Williams' motion and Jacob's response. Jacob had notice of the motion and was given a full opportunity to defend against Williams' lien claim on the merits. The court conducted an evidentiary hearing before deciding the matter and entered a completely separate judgment that resolved the issues between Williams and Jacob. We find no abuse of discretion in the trial court's decision that the foregoing method of enforcing Williams' lien was appropriate under all of the facts and circumstances. *See Woodruff v. Rusk,* 229 Mo. App. 119, 76 S.W.2d 709, 711 (1934) (noting that the nature of the right and the particular facts of each case must determine the method of enforcing an attorney's lien). The judge was already familiar with the issues raised, and the work done by Williams, in the underlying case. Jacob's due process rights were respected. The procedure followed here was no different, in its essential aspects, than the court would have employed if Williams had brought a separate action against Jacob.

As our Supreme Court held in a case involving a similar lack-of-jurisdiction assertion because the attorney sought to proceed by motion in the underlying case:

> [I]t is clear that relator will not be thereby deprived of any essential right. He has had due notice of the proceeding, and he is just as fully advised as to the nature of his attorney's claim, and for aught that appears will be accorded just as fully the right of defending against it, as though the proceeding had been commenced by the filing of a bill in equity instead of an informal pleading.

*State ex rel. Anderson v. Roehrig,* 320 Mo. 870, 8 S.W.2d 998, 1000 (1928).

*Lewis v. Lewis,* 207 S.W.2d 524 (Mo. App.1948), involved the same issue. There, the attorney filed motions in the underlying case, instead of a separate suit in equity. The trial court used the motions and responses to frame the issues in the same manner as a petition and answer and tried the case accordingly. The *Lewis* court held that, under the facts and circumstances of the case, this procedure was proper. *Id.* at 527.

*Reed* also involved the assertion that proceeding by motion in the underlying case, instead of separate lawsuit, deprived the complaining party of the panoply of procedures available in such an independent suit. The *Reed* court rejected that argument because the complaining party was not deprived of any essential right when the trial court adjudicated the issues by way of a motion instead of an independent action. *Reed,* 832 S.W.2d at 949. "[A]ppellant received due notice, was fully advised of the nature of his own claim, and was fully accorded the right to present evidence in support thereof." *Id.*

Finally, in *Crain v. Missouri Pac. R.R.,* 640 S.W.2d 533 (Mo.App.1982), attorney McCarthy claimed that she had an attorney's lien upon the proceeds of a personal injury claim that was settled by attorneys Martin and Henry. Attorney McCarthy filed a motion in the underlying case to enforce her lien, and the disputed fee was paid into court. McCarthy filed an application for a change of judge, which was denied. *Id.* at 534–35. On appeal, the *Crain* court held that denial of McCarthy's application for change of judge was error because the dispute involved an independent civil action, even though it had been initiated by motion in the underlying case:

> The case pending before the trial judge at the time McCarthy filed her application for disqualification was a "civil action" within the meaning of Rule 51.05(a). It is true that the pleadings and papers filed in the McCarthy–Martin controversy continued to carry the same caption and case numbers as the

original cases of *Shelton, et al., v. Missouri Pacific Railroad Company,* and *Crain, et al., v. Missouri Pacific Railroad Company,* and continued to be filed in the same file folder. Still it was an independent action as between McCarthy on the one side, and Martin and Henry on the other. They were different parties than those in the original action. The plaintiffs and defendant in the original cases had no further interest in the matter. In short, Martin's motion for the payout of the attorney's fee according to his calculations, and McCarthy's "petition to Interplead" raised new issues, sought different relief, and contemplated an adjudication of substantial rights between the parties. The McCarthy–Martin controversy was thus an independent civil action, in which either of them was entitled as a matter of right upon written application to a change of judge.

*Id.* at 535 (citation omitted).

As the foregoing authorities illustrate, Williams' lien claim was an independent civil action, even though the matter was initiated by motion in the underlying case. The court adjudicated the matter in the same way an independent lawsuit would have been decided, so Jacob suffered no prejudice from the procedure employed. Because the lien claim constituted an independent civil action, there was no jurisdictional bar that precluded the trial court from adjudicating that claim and entering an independent judgment. Therefore, we conclude that the trial court did not abuse its discretion in allowing Williams to foreclose his attorney's lien by motion in the underlying case. Point I is denied.

## Point II

In Jacob's second point, it contends the trial court erred in determining the amount of Williams' attorney's lien because the court included costs and fees unrelated to Williams' work on the underlying case. The following facts are relevant to our discussion of this point.

At the evidentiary hearing, the trial court heard testimony from Coy Jacob (Coy), on behalf of Jacob, and Williams. Williams presented testimony and introduced exhibits, which were admitted into evidence, showing that Jacob incurred charges in the Drake quiet title action (hereinafter, the Drake matter) totaling $59,863.92. Considering payments on the account and not including recent interest on the overdue balance, Williams testified that he believed a lien amount of $35,546.08 was "a fair amount to be assessed as the attorney's fees unpaid with respect to services performed in this case." Williams also explained that he performed legal services for Jacob on other matters, for which additional sums are still due and owing. Payments made by Jacob were applied to the oldest matters first, leaving the balance due on the Drake matter after the recent decision in its appeal. Coy, on the other hand, testified that Williams included costs and fees from other matters in the balance due on the Drake matter. The trial court awarded Williams $35,546.08 in attorney's fees.

The trial court's judgment is presumed correct, and Jacob bears the burden of proving it erroneous. *Grider v. Tingle,* 325 S.W.3d 437, 440 (Mo.App.2010). Appellate review in this court-tried case is governed by Rule 84.13(d) and is well established. *Id.; Crossland v. Thompson,* 317 S.W.3d 635, 637 (Mo.App.2010). "The trial court's judgment will be sustained unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Crossland,* 317 S.W.3d at 637; *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Substantial evidence is evidence which has probative force and from which the trier of fact could reasonably find the issues in harmony with its decision. *Harvard Prop-*

erties, LLC v. City of Springfield, 262 S.W.3d 278, 279 (Mo.App.2008).

We view the evidence and all reasonable inferences derived therefrom in the light most favorable to the judgment, and disregard all contrary evidence and inferences. *Bacon v. Uhl*, 173 S.W.3d 390, 396 (Mo.App.2005). The credibility of the witnesses and the weight to be given to their testimony is for the trial court, which is free to believe none, part or all of the testimony of any witness. *Christian Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 48 (Mo.App.2004). "We defer to the trial judge's superior opportunity to assess the witnesses' credibility." *Lee v. Hiler*, 141 S.W.3d 517, 520 (Mo.App.2004). "[A]n appellate court will interfere with an attorney fee award only on a showing of abuse of discretion." *Lau v. Pugh*, 299 S.W.3d 740, 752 (Mo.App. 2009). An abuse of discretion occurs when the trial court's decision was so against the logic of the circumstances, and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*, see *Bacon*, 173 S.W.3d at 399.

Jacob argues that the trial court granted "a lien for the amount allegedly due on all of Mr. Jacob's accounts rather than the amount due on the Drake matter [and that it] is impossible to determine what, if any, amount is due with respect to the Drake matter." We disagree. "An open account is an implied contract consisting of ongoing charges by one party and payments by the other party." *Olsen & Talpers, P.C. v. Murphy*, 247 S.W.3d 620, 622 (Mo.App.2008). Jacob asserted payment as a defense, and it bore the burden of proof on that defense. *Bland v. Schubert*, 941 S.W.2d 24, 26 (Mo. App.1997). Because Jacob had several open accounts with Williams, the following principles also apply:

> Generally, the law is that when a debtor owes on various accounts and makes partial payment against the total, the debtor has the first right to dictate which account or accounts shall be the ones towards which the payment shall be applied. However, absent such direction from the debtor, the creditor may apply a partial payment in any manner he or she believes necessary and appropriate to protect his or her interests.

*Glasco Elec. Co. v. Best Elec. Co.*, 751 S.W.2d 104, 110 (Mo.App.1988) (citation omitted).

Williams' testimony and exhibits tended to prove that Jacob had several open accounts on which it owed Williams money for his legal services. There was no evidence that Jacob directed that its payments be applied to any particular account. Williams testified about his office policy on how payments were credited. The trial court obviously believed Williams' testimony and evidence, and disbelieved Coy's contrary testimony that all fees for the Drake matter had been paid. We defer to the trial court's credibility determination. *Bland*, 941 S.W.2d at 27. In addition, "the trial court is considered an expert in the necessity, reasonableness, and value of the legal services." *In re Fuldner*, 41 S.W.3d 581, 596 (Mo.App. 2001); *In re Marriage of Cornella*, 335 S.W.3d 545, 557 (Mo.App.2011); *Lau*, 299 S.W.3d at 751. We hold that the trial court did not abuse its discretion in awarding Williams $35,546.08 in attorney's fees and granting him an attorney's lien in that amount. Point II is denied.

The judgment of the trial court is affirmed.

BARNEY, and FRANCIS, JJ., Concur.